**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

DENNIS LARKIN and DANIELLE
GOSLINE, individually and on behalf of all
others similarly situated,

     Plaintiffs,

   v.

CAREMARK RX, L.L.C. (d/b/a CVS
CAREMARK),

     Defendant.

Case No. 1:25-cv-07307

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.    RELEVANT FACTS ................................................................................................... 2

    A.   Defendant Administers Plaintiffs' Prescription Drug Benefits. ....................................... 2

    B.   Plaintiffs Were Prescribed Medically Necessary Zepbound, Then Suddenly Denied
    Coverage. .................................................................................................................. 3

    C.   The Governing ERISA Plan Documents Do Not Contain Arbitration Provisions. ............ 3

    D.   The Website Terms and the Arbitration Provision Are Completely Separate from the
    ERISA Plan Documents. .............................................................................................. 4

III.    PROCEDURAL HISTORY ......................................................................................... 5

IV.    LEGAL STANDARD ................................................................................................. 5

V.    ARGUMENT ............................................................................................................. 7

    A.   CVS Caremark Cannot Compel Arbitration Because Plaintiffs Never Agreed to Arbitrate
    Disputes with CVS Caremark. ..................................................................................... 7

        1.   The Governing Relationship Between Plaintiffs and CVS Caremark is Defined by the
        ERISA Plan Documents, Which Contain No Arbitration Provision. .................................. 7

        2.   Participants Were Never Notified of, or Asked to Consent to, Any Arbitration
        Provision as Required for Material Plan Changes Under ERISA. ...................................... 9

        3.   CVS Caremark Cannot Enforce an Arbitration Agreement to Which It is Not a Party. ..
        .................................................................................................................... 11

    B.   Even if an Arbitration Agreement Existed, it Would Be Unenforceable Because it
    Prevents Plaintiffs from Effectively Vindicating Their ERISA Rights. ................................. 13

    C.   The Website Arbitration Clause is Unconscionable and Independently Unenforceable. .. 16

        1.   The Arbitration Clause Is Procedurally Unconscionable. ........................................... 16

        2.   The Arbitration Clause Is Substantively Unconscionable. .......................................... 18

    D.   This Action Should Not Be Stayed. ............................................................................ 20

    E.   Discovery Should Not Be Stayed. ............................................................................... 21

VI.    CONCLUSION .......................................................................................................... 22

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ................................................................................................... 6, 13, 15

*Burke v. Kodak Ret. Income Plan*,
336 F.3d 103 (2d Cir. 2003) .............................................................................................. 10, 15

*Cedeno v. Sasson*,
100 F.4th 386 (2d Cir. 2024) ......................................................................... 13, 14, 15, 21

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) .................................................................................................. 6, 19

*Duke v. Luxottica U.S. Holdings Corp.*,
167 F.4th 16 (2d Cir. 2026) ........................................................................................*passim*

*Frommert v. Conkright*,
433 F.3d 254 (2d Cir. 2006) ...................................................................................................9

*Genesco, Inc. v. T. Kakiuchi & Co.*,
815 F.2d 840 (2d Cir. 1987) ................................................................................................. 21

*Gillman v. Chase Manhattan Bank, N.A.*,
73 N.Y.2d 1 (1988).................................................................................................................. 16

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) ...................................................................................................... 11, 19

*Greenwich Capital Fin. Prods., Inc. v. Negrin*,
903 N.Y.S. 2d 346 (1st Dep't 2010) ................................................................................ 20

*Haft v. Haier US Appliance Sols. Inc.*,
578 F. Supp. 3d 436 (S.D.N.Y. 2022) ............................................................................ 18

*Holick v. Cellular Sales of N.Y., LLC*,
802 F.3d 391 (2d Cir. 2015) .............................................................................................. 6, 7

*Kwik Ticket Inc. by Shamah v. Spiewak*,
2020 WL 5658723 (E.D.N.Y. Sept. 23, 2020) ............................................................ 21

*Layaou v. Xerox Corp.*,
238 F.3d 205 (2d Cir. 2001) ............................................................................................ 9, 15

*Loc. Union No. 38 Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*,
357 F.3d 266 (2d Cir. 2004) .............................................................................................. 12

*McFarlane v. Altice USA, Inc.*,
524 F. Supp. 3d 264 (S.D.N.Y. 2021) ....................................................................... 19, 20

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
337 F.3d 125 (2d Cir. 2003) .............................................................................................. 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ............................................................................................................ 15

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ........................................................................... 6, 17, 19, 22

*Platt v. Sodexo, S.A.*,
148 F.4th 709 (9th Cir. 2025) ..................................................................................... 10, 15

*Polanco v. WPP Grp. USA, Inc.*,
2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025)................................................................. 8

*Ragone v. Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010) ...................................................................... 16
*Ross v. Am. Express Co.*,
  547 F.3d 137 (2d Cir. 2008) ........................................................................ 6
*Snyder v. Fed. Ins. Co.*,
  2009 WL 700708 (S.D. Ohio Mar. 13, 2009) .............................................. 9
*Sosa v. Parco Oilfield Servs., Ltd.*,
  2006 WL 2821882 (E.D. Tex. Sept. 27, 2006) ............................................ 9
*Sudakow v. CleanChoice Energy, Inc.*,
  153 F.4th 280 (2d Cir. 2025) .................................................................... 12
*Tchrs. Ins. & Annuity Ass'n of Am. v. Adair*,
  2023 WL 2557390 (S.D.N.Y. Mar. 17, 2023) ...................................... 11, 12
*Thomson-CSF, S.A. v. Am. Arb. Ass'n*,
  64 F.3d 773 (2d Cir. 1995) ........................................................................ 11
*Trs. of Nat'l Ret. Fund v. FireService Mgmt. LLC*,
  384 F. Supp. 3d 412 (S.D.N.Y. 2019) ........................................................ 16
*Trs. of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*,
  102 F.4th 572 (2d Cir. 2024) ...................................................................... 8
*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013) ...................................................................................... 8
*Wexler v. AT & T Corp.*,
  211 F. Supp. 3d 500 (E.D.N.Y. 2016) ........................................................ 20

## Statutes

9 U.S.C. § 2 ................................................................................................ 6, 19
29 U.S.C. § 1024(B) ........................................................................................ 9
29 U.S.C. § 1104(A) .................................................................................... 5, 8
29 U.S.C. § 1106 .............................................................................................. 5
29 U.S.C. § 1109 ...................................................................................... 13, 14
29 U.S.C. §§ 1022 ............................................................................................ 9

## Rules

Fed. R. Civ. P. 26(C) ...................................................................................... 21

## Regulations

29 CFR § 2560.503-1 (2005) ............................................................................ 8

## Other Authorities

*Infinite Arbitration Clauses*,
  168 U. Pa. L. Rev. 633 (2020) .................................................................... 19

iv

## I.  <u>INTRODUCTION</u>

This case concerns the attempt by Defendant Caremark Rx, L.L.C., d/b/a "CVS Caremark" to force ERISA claims into arbitration based on website terms <u>that were never part of the governing health plan documents and were never disclosed to plan participants</u>. Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA") after CVS Caremark, acting as the plans' pharmacy benefit manager and claims administrator, denied coverage for medically necessary prescriptions. Rather than defend those decisions on the merits, CVS Caremark seeks to compel arbitration based on a click-wrap agreement associated with its website.

That effort fails for several independent reasons. First, the governing ERISA plan documents that define the rights and obligations of plan participants contain no arbitration provision. Second, participants were never notified of any arbitration requirement through the Summary Plan Description ("SPD") or a Summary of Material Modifications ("SMM"), as ERISA requires for material changes to plan terms. Third, the website terms on which CVS Caremark relies were entered into, if at all, with a different corporate entity—one of Defendant's subsidiaries—not with Defendant itself.

Fourth, even if those defects did not exist, the arbitration clause would *still* be unenforceable. The clause purports to require individual arbitration of claims seeking plan-wide relief under ERISA, which, as discussed below, was held as impermissible in the Second Circuit under the effective-vindication doctrine. Fifth, the provision is also procedurally and substantively unconscionable: it was buried in website terms unrelated to the ERISA plans and imposed as a condition of accessing prescription services. In short, CVS Caremark asks this Court to enforce an arbitration clause that was never part of the ERISA plans, never disclosed to participants, and cannot lawfully extinguish the statutory remedies Plaintiffs and the proposed Class members seek.

Because no valid agreement to arbitrate exists—and because the clause CVS Caremark invokes would be unenforceable in any event—the Court should deny Defendant's motion to compel arbitration and allow this case to proceed.

## II.   RELEVANT FACTS

### A.   Defendant Administers Plaintiffs' Prescription Drug Benefits.

CVS Caremark is a pharmacy benefit manager ("PBM") that administers prescription drug benefits for many employer-sponsored health plans nationwide. Compl. ¶ 1. In that role, Defendant processes prescription drug claims, administers prior authorization requests and appeals, and determines whether requested medications are covered under the terms of the applicable health plan. *Id.* ¶¶ 145–48. Plaintiffs Dennis Larkin and Danielle Gosline are participants in employer-sponsored health plans governed by ERISA. *Id.* ¶ 1. Their plans use CVS Caremark to administer prescription drug benefits. *Id.* ¶¶ 8, 19.

Caremark Rx, L.L.C.—the Defendant in this action—is a wholly owned subsidiary of CVS Health Corporation that does business under the name "CVS Caremark." Plaintiffs Opposition to Defendant's Motion to Dismiss ("Opp. to Def.'s MTD"), ECF No. 48 at 10. Plaintiffs identified Caremark Rx as the responsible entity based on Caremark's own branding and communications with plan participants, which uniformly identify the PBM administering prescription benefits as "CVS Caremark" without distinguishing among Caremark corporate affiliates. *Id.* Consistent with those representations, the summary plan descriptions and denial letters provided to Plaintiffs identify "CVS Caremark" as the PBM responsible for administering prescription drug benefits and communicating coverage determinations. *Id.* CaremarkPCS Health, L.L.C. is not referenced in those materials. *Id.; see, e.g.,* ECF Nos. 42-3, 42-6, 42-7, 42-8.

**B.    Plaintiffs Were Prescribed Medically Necessary Zepbound, Then Suddenly Denied Coverage.**

Mr. Larkin's physician prescribed Zepbound for him in December 2023, first for weight management and, since April 2024, also to treat his severe obstructive sleep apnea. Compl. ¶¶ 9-11. Ms. Gosline's physician prescribed Zepbound for her in January 2024 for weight management and obesity. *Id.* ¶ 20. Plaintiffs' employers began using CVS Caremark as their PBM in January 2025, and CVS Caremark approved Plaintiffs' prescriptions for Zepbound through June 2025. *Id.;* ¶¶ 12-13, 21-23.

Beginning in July 2025, however, CVS Caremark suddenly denied coverage for both Plaintiffs' prescriptions and upheld those denials on appeal. In denial letters sent to Plaintiffs, CVS Caremark stated that Zepbound was not medically necessary under the plans' formulary criteria and identified alternative medications as preferred drugs. *Id.* ¶¶ 14-15, 23-25. Plaintiffs challenge those determinations as violations of ERISA, including breaches of fiduciary duty, prohibited transactions, and violations of plan terms. *Id*. ¶¶ 161–187.

**C.    The Governing ERISA Plan Documents Do Not Contain Arbitration Provisions.**

Importantly, neither Plaintiff's ERISA plan document contains an arbitration provision. Ms. Gosline's Summary Plan Description ("SPD") provides that disputes arising under the plan must be brought in federal court or a court located in New York. Gosline SPD at 172–73 (Ex. 1 to Declaration of Julie S. Selesnick in Support of Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration ("Selesnick Decl.")). Mr. Larkin's Summary Plan Description likewise states that participants have the right to bring a civil action in federal court after exhausting the plan's internal claims procedures. Larkin SPD at 223 (Ex. 2 to Selesnick Decl.). The plan documents therefore contemplate judicial review of benefits determinations under ERISA.

3

**D.    The Website Terms and the Arbitration Provision Are Completely Separate from the ERISA Plan Documents.**

Completely separate from the ERISA plan documents, Plaintiffs created accounts on the website www.caremark.com simply to access information regarding their prescription benefits. ECF No. 57, Declaration of Kimberly Lees in Support of Defendant Caremark Rx, L.L.C.'s Motion to Compel Arbitration ("Lees Decl.") ¶¶ 7, 17. Defendant relies on clickwrap arbitration language contained in the website's "Terms and Conditions." Lees Decl., Exs. A and B. The website does not govern whatsoever benefits determinations under ERISA under the applicable health plans, which is at issue here.

Those Terms and Conditions on the website, however, are agreements between website users and Caremark L.L.C., (ECF No. 57-1, Ex. A to Lees Decl.), later CaremarkPCS Health, L.L.C. (ECF No. 57-2, Ex. B to Lees Decl.), the entity identified in the terms themselves. The arbitration provision states that disputes must be arbitrated between the user and "CVS Caremark," which the Terms define to include CaremarkPCS Health, L.L.C., its subsidiaries, and its affiliates. Caremark Rx, L.L.C.—the Defendant in this action—is not a party to either version of the website's Terms and Conditions.

Instead, Defendant contends that Caremark Rx may enforce the arbitration provision because it is the parent company of CaremarkPCS Health and therefore qualifies as an "affiliate" under the Terms' definition. Defendant's Mem. of Law in Support of its Motion to Compel Arbitration ("Def.'s MTC"), ECF No. 56, at 16-17. Plaintiffs dispute that interpretation. Under ordinary corporate law principles, a parent company is distinct from its subsidiaries and affiliates, and agreements entered into by a subsidiary do not automatically bind or benefit the parent absent explicit contractual language to that effect.

4

III.    **PROCEDURAL HISTORY**

Both Plaintiffs exhausted their administrative remedies under their respective plans. Compl. ¶¶ 106, 111. On September 3, 2025, Plaintiffs filed this action on behalf of themselves and a proposed class, alleging that CVS Caremark breached its fiduciary duties in violation of ERISA, 29 U.S.C. § 1104(a), engaged in prohibited transactions in violation of 29 U.S.C. § 1106, and violated the terms of Plaintiffs' health plans. Compl. ¶¶ 161–81. The Complaint does <u>not</u> allege any claims arising out of the use of the website.

In November 2025, Defendant moved to dismiss the Complaint. *See* ECF No. 41. In that motion, CVS Caremark argued that dismissal was warranted because: (1) it was not a fiduciary under the relevant plan agreements; (2) Zepbound was not covered under the terms of Plaintiffs' plans; and (3) Plaintiffs lacked a cause of action under ERISA with respect to plans in which they did not participate. See Def.'s Mem. of Law in Support of Motion to Dismiss ("Def.'s MTD") at 14–23. Those arguments address the substance of Plaintiffs' ERISA claims and the terms of the governing plans.

The motion to dismiss did not seek to compel arbitration. Instead, on the same day it filed its motion to dismiss—more than two months after the Complaint was filed—Defendant submitted a pre-motion letter requesting permission to move to compel arbitration. ECF No. 37. Defendant thus sought dismissal of Plaintiffs' ERISA claims on the merits while simultaneously requesting leave to file a separate motion to compel arbitration. Plaintiffs opposed that request. ECF No. 44. The Court held a pre-motion conference on January 22, 2026, and set a briefing schedule for Defendant's motion to compel arbitration. ECF No. 52.

IV.    **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable," except on grounds that exist at law or in equity for the

revocation of any contract. 9 U.S.C. § 2. Although the FAA reflects a federal policy favoring arbitration, that policy "is not absolute." *Ross v. Am. Express Co.*, 547 F.3d 137, 143 (2d Cir. 2008). The Second Circuit has emphasized that the FAA's liberal policy favoring arbitration is limited by the principle that "arbitration is a matter of consent, not coercion," and that "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015). Accordingly, courts may compel arbitration of a particular dispute only where they are satisfied that the parties agreed to arbitrate that dispute. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021).

In determining whether a dispute is arbitrable, courts consider "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick*, 802 F.3d at 394. Motions to compel arbitration are evaluated under a standard similar to that applied to summary judgment; the court must consider all relevant admissible evidence and draw all reasonable inferences in favor of the non-moving party. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

Arbitration agreements may not be enforced where doing so would prevent a party from effectively vindicating statutory rights. Under the effective vindication doctrine, courts may decline to enforce arbitration provisions that operate as a prospective waiver of a party's ability to pursue statutory remedies. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013). The Second Circuit recently reaffirmed that principle in the ERISA context, holding that arbitration provisions cannot require individual arbitration where doing so would foreclose representative claims authorized by ERISA. *Duke v. Luxottica U.S. Holdings Corp.*, 167 F.4th 16 (2d Cir. 2026).

## V.     ARGUMENT

### A.     CVS Caremark Cannot Compel Arbitration Because Plaintiffs Never Agreed to Arbitrate Disputes with CVS Caremark.

Arbitration is fundamentally a matter of consent. The FAA does not authorize courts to compel arbitration unless the parties actually agreed to arbitrate the dispute at issue. *See Holick*, 802 F.3d at 394–95. CVS Caremark cannot meet that threshold requirement. The arbitration provision on which it relies appears nowhere in the governing ERISA plan documents, was never disclosed to participants through the mechanisms that ERISA requires for material plan changes, and was never agreed to by Plaintiffs. These failures independently foreclose CVS Caremark's attempt to compel arbitration and are dispositive of this motion.

### 1.     The Governing Relationship Between Plaintiffs and CVS Caremark is Defined by the ERISA Plan Documents, Which Contain No Arbitration Provision.

Any relationship between Plaintiffs and CVS Caremark arises solely from the ERISA-governed health plans in which Plaintiffs participate and the documents governing those plans. ERISA requires employee benefit plans to be administered pursuant to written plan documents, and participants are informed of their rights and obligations through the SPD and other governing plan instruments.[1] Those documents explain the benefits available under the plans and the procedures governing claims, appeals, and enforcement of participant rights.

The Complaint alleges that CVS Caremark acts as the pharmacy benefit manager ("PBM") and claims administrator for the plans and exercises delegated authority to interpret plan provisions and adjudicate prescription drug claims and appeals. Compl. ¶ 26. Because CVS Caremark's authority derives entirely from the plan documents, it cannot impose additional restrictions on

---

[1]  *See* U.S. Dep't of Lab., Plan Information, https://www.dol.gov/general/topic/health-plans/planinformation (last visited Mar. 16, 2026).

participant rights that do not appear in those governing documents or alter the enforcement mechanisms provided under the plan. The governing plan documents here contain no arbitration provision and no waiver of participants' rights to bring ERISA claims in federal court.

Allowing CVS Caremark to impose arbitration through external website terms would therefore permit a plan fiduciary or service provider to impose new limitations on participants' statutory rights outside the governing ERISA plan documents. That result would conflict directly with ERISA's statutory requirement that fiduciaries administer plans "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). ERISA's purpose is to "protect contractually defined benefits," and the statute's enforcement scheme "is built around reliance on the face of written plan documents." *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *3 (S.D.N.Y. Oct. 27, 2025) (quoting *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–01 (2013)). ERISA fiduciaries must administer plans in accordance with their governing documents, and failure to do so constitutes a breach of fiduciary duty. *See, e.g., Trs. of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 597 (2d Cir. 2024).

Further, the arbitration provision does not comply with ERISA regulations. *See* 29 CFR § 2560.503-1 (2005) (stating, in pertinent part: "The claims procedures of a group health plan will be deemed to be reasonable only if ... [they] do not contain any provision for the mandatory arbitration of adverse benefit determinations, except to the extent that the plan or procedures provide that (i) The arbitration is conducted as one of the two appeals described in paragraph (c)(2) of this section and in accordance with the requirements applicable to such appeals; and (ii) The claimant is not precluded from challenging the decision under section 502(a) of the Act [ERISA] or other applicable law."). Here, the arbitration clause at issue is not part of an appeals process and

attempts to preclude Plaintiffs from challenging their denial of benefits in federal court, thus violating the claim regulation. *Sosa v. PARCO Oilfield Servs., Ltd.*, 2006 WL 2821882, at \*7 (E.D. Tex. Sept. 27, 2006) (holding plaintiff's ERISA claim was not subject to arbitration because "the arbitration provision is in conflict with the applicable regulations"); *Snyder v. Fed. Ins. Co.*, 2009 WL 700708, at \*6 (S.D. Ohio Mar. 13, 2009) (finding the arbitration provision violated the claim regulation).

Because the governing plan documents contain no arbitration provision, which violates regulations in any event, CVS Caremark cannot compel Plaintiffs to arbitrate their ERISA claims.

### 2.  Participants Were Never Notified of, or Asked to Consent to, Any Arbitration Provision as Required for Material Plan Changes Under ERISA.

Even if arbitration provisions could apply in the ERISA context, CVS Caremark cannot enforce one here because participants were never provided notice of such a provision through the mechanisms that ERISA requires for material changes to plan terms. ERISA requires that employee benefit plans be maintained pursuant to a written instrument and that participants be informed of plan terms through an SPD. *See* 29 U.S.C. §§ 1022, 1102. When a plan sponsor adopts a material change to plan terms, participants must be notified of that change through a Summary of Material Modifications ("SMM") or updated SPD so that they are aware of the change and their rights under the plan. *See* 29 U.S.C. § 1024(b); *Frommert v. Conkright*, 433 F.3d 254, 263 (2d Cir. 2006) (holding an ERISA "amendment" occurs only when employees are informed of a change in the text of the plan and rejecting the argument that a plan may be amended merely by altering its operation.)

Courts interpreting plan terms under ERISA have repeatedly held that participants cannot be bound by material limitations on their rights that were never disclosed through ERISA's required plan communications. *See, e.g., Layaou v. Xerox Corp.*, 238 F.3d 205, 209–11 (2d Cir.

2001) (refusing to enforce plan limitation not adequately disclosed in SPD); *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 113–14 (2d Cir. 2003) (recognizing that ERISA's disclosure rules protect participants who rely on plan descriptions of their rights). The Ninth Circuit recently held that plan participants were not bound by an arbitration provision where they were never properly informed of the provision through plan disclosures and were not notified that continued participation in the plan would constitute consent. *Platt v. Sodexo, S.A.*, 148 F.4th 709, 719 (9th Cir. 2025). The court explained that participants cannot be deemed to have assented to arbitration when they were never provided the disclosures that ERISA requires to inform them of material plan terms. *Id.*

The same problem exists here. CVS Caremark does not contend that the governing ERISA plans were amended to include an arbitration provision, nor does it identify any SPD or SMM informing participants that disputes concerning plan benefits or fiduciary conduct would be subject to mandatory arbitration rather than federal court review. Instead, CVS Caremark attempts to impose arbitration through separate website terms that were never incorporated into the plan documents and never disclosed to participants as a change to their plan rights.

Allowing a service provider to impose arbitration outside ERISA's disclosure framework would defeat the statute's core purpose of ensuring that participants can understand their rights by reviewing the written plan documents provided to them. Because Plaintiffs were never informed through ERISA-compliant disclosures that their rights to bring ERISA claims could be replaced with mandatory arbitration, they cannot be deemed to have consented to such a requirement.

For that independent reason, CVS Caremark cannot compel arbitration.

### 3.   CVS Caremark Cannot Enforce an Arbitration Agreement to Which It is Not a Party.

Even if a valid arbitration provision existed, CVS Caremark could not compel arbitration because it is not a party to any arbitration agreement with Plaintiffs. A party seeking to compel arbitration must demonstrate that a valid arbitration agreement exists between the parties to the dispute. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). Here, CVS Caremark cannot satisfy that requirement. The arbitration provision upon which Defendant relies appears in website terms associated with Caremark LLC (Lees Decl., Ex. A), later known as CaremarkPCS LLC (Lees Decl., Ex. B); entities that are wholly owned subsidiaries of Defendant Caremark Rx LLC. Caremark Rx LLC is therefore not the contracting party identified in the agreement on which Defendant relies.

Nor does the language of the website agreement extend arbitration rights to the parent entity. The agreement states that it applies to the contracting entity's "subsidiaries and affiliates," (Lees Decl., Ex. A, p. 1; Ex. B, p. 1), but it does not extend those rights to the parent company. Under ordinary corporate law principles, a parent corporation is legally distinct from its subsidiaries, and agreements entered into by a subsidiary do not automatically bind or benefit the parent absent explicit contractual language to that effect.

Courts applying New York law recognize only limited circumstances in which a non-signatory may enforce or be bound by an arbitration agreement. Specifically, a non-signatory may compel or be compelled to arbitration only under recognized contract or agency doctrines such as incorporation by reference, assumption, agency, veil-piercing or alter ego, or estoppel. *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); *Tchrs. Ins. & Annuity Ass'n of Am. v. Adair*, 2023 WL 2557390, at *7 (S.D.N.Y. Mar. 17, 2023). These "limited exceptions follow ordinary principles of contract and agency," and the party seeking to arbitrate with a non-signatory

11

bears the burden of proving that one of these doctrines applies. *Adair*, 2023 WL 2557390, at *7 (quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003)); *see also Loc. Union No. 38 Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004). CVS Caremark does not attempt to satisfy any of these doctrines. It does not contend that Plaintiffs agreed to arbitrate disputes with Caremark Rx L.L.C., that the website agreement incorporated the parent entity, or that any agency or alter-ego relationship would permit the parent corporation to enforce the subsidiary's contract. The sole support Defendant offers for this theory is a reference to the definition of the term "affiliate" in *Black's Law Dictionary*. Def.'s MTC at 16–17.

Absent such a showing, Defendant cannot compel arbitration based on an agreement to which it was never a party. Courts applying the Federal Arbitration Act consistently refuse to compel arbitration where the party seeking to enforce the arbitration provision was not a party to the agreement. *See, e.g.*, *Sudakow v. CleanChoice Energy, Inc.*, 153 F.4th 280, 285–88 (2d Cir. 2025) (refusing to compel arbitration where the plaintiff lacked notice of the arbitration terms and did not assent to them).

Here, Plaintiffs' rights and causes of action arise <u>from the ERISA plans in which they participate, and those plans contain no arbitration provision</u>. Because CVS Caremark is not a party to the purported arbitration agreement—and the agreement's terms do not extend to the parent entity—Defendant cannot compel arbitration. Because CVS Caremark is not a party to the purported arbitration agreement—and because it has not made the requisite showing that the agreement's terms extend to the parent entity as required by New York law—Defendant cannot compel arbitration.

12

**B.**     **Even if an Arbitration Agreement Existed, it Would Be Unenforceable Because it Prevents Plaintiffs from Effectively Vindicating Their ERISA Rights.**

Even where an arbitration agreement exists, courts will not enforce provisions that operate as a prospective waiver of statutory rights. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013). Under Supreme Court and Second Circuit law setting out the "effective vindication" doctrine, arbitration clauses are unenforceable when they prevent parties from pursuing remedies that federal statutes authorize. *Id.* This principle carries particular force in the ERISA context. Congress designed ERISA's fiduciary enforcement provisions to protect plan participants and to ensure that fiduciaries who breach their duties are held accountable for losses to the plan. *See* ERISA § 409, 29 U.S.C. § 1109.

The Second Circuit regularly invalidates arbitration provisions in ERISA plans due to the effective vindication exception and holds that arbitration provisions cannot be enforced where they prevent plan participants from pursuing the statutory remedies authorized by ERISA. For example, in *Cedeno v. Sasson*, the Second Circuit held that an arbitration clause requiring individual arbitration was unenforceable because it barred the participant from seeking plan-wide relief for breaches of fiduciary duty under ERISA § 409. 100 F.4th 386, 396–405 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 447 (2024). The Second Circuit explained that ERISA does not permit adjudicators to "slice and dice" fiduciary breach claims into individualized remedies where the statute authorizes relief on behalf of the plan. *Id.* at 405.

That principle was reaffirmed by the Second Circuit even more recently, holding that arbitration provisions that require claims to be pursued only on an individual basis cannot be enforced where doing so would foreclose the statutory remedies available under ERISA. *See Duke v. Luxottica U.S. Holdings Corp.*, 167 F.4th 16 (2d Cir. 2026). In *Duke*, which is controlling here, the Second Circuit emphasized that ERISA expressly authorizes participants to pursue relief that

13

restores losses to the plan and remedies fiduciary misconduct affecting plan participants collectively. *Id.*

The arbitration provision that CVS Caremark seeks to enforce suffers from the same defect. By requiring arbitration on an individual basis, the provision would prevent Plaintiffs from pursuing the full scope of remedies that ERISA authorizes for fiduciary misconduct affecting plan participants. ERISA § 409 provides that fiduciaries who breach their duties are personally liable "to make good to such plan any losses to the plan" and are subject to "such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a). Claims to enforce those remedies are brought under ERISA § 502(a)(2), which authorizes participants to seek relief on behalf of the plan itself. *See Cedeno*, 100 F.4th at 396–405.

CVS Caremark argues that the effective vindication doctrine does not apply because Plaintiffs did not expressly plead a claim under ERISA § 502(a)(2). That argument mischaracterizes the Complaint. Plaintiffs allege that CVS Caremark breached its fiduciary duties and engaged in prohibited transactions, and seek relief under ERISA § 409, which expressly provides that breaching fiduciaries must restore losses to the plan and provide other equitable relief. Compl. ¶¶ 168, 175 (seeking "equitable relief, including restitution, surcharge, and other remedies under ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109, 1132(a).").

The relief requested in the Complaint confirms that Plaintiffs seek *precisely* the type of statutory remedies that the effective vindication doctrine protects. Plaintiffs seek equitable relief including restitution, surcharge, and other remedies authorized by ERISA §§ 409 and 502(a), *see* Compl. ¶¶ 168, 175; those sections of the statute require breaching fiduciaries to restore losses to the plan and provide appropriate equitable relief. Those remedies are inherently plan-focused and cannot be meaningfully pursued through individualized arbitration that limits claims to the

14

participant bringing the arbitration. As the Second Circuit explained in *Cedeno*, ERISA does not permit adjudicators to "slice and dice" fiduciary breach claims into individualized remedies where the statute authorizes relief for the plan as a whole. 100 F.4th at 405.

More fundamentally, the effective vindication analysis turns on whether the arbitration provision would eliminate statutory remedies that ERISA authorizes—not on how a defendant characterizes the pleading of those claims. Courts evaluating arbitration provisions must consider the scope of statutory rights and remedies at issue. *See Italian Colors,* 570 U.S. at 235. "Because individual arbitration would 'materially interfere with [Plaintiffs'] ability to seek relief under' Section 502(a)(2), the effective vindication doctrine precludes its enforcement." *Duke v. Luxottica U.S. Holdings Corp.*, 167 F.4th 16, 30 (2d Cir. 2026). Just like in *Cedeno*, the arbitration provision here is unenforceable because if enforced, it will deprive the Plaintiffs of even their "right to *pursue* statutory remedies." *Cedeno*, 100 F.4th at 401 (emphasis added) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)).[2]

Because the arbitration provision would operate as a prospective waiver of statutory ERISA remedies, including plan-wide relief and equitable remedies under ERISA §§ 409 and 502(a), it is unenforceable under the effective vindication doctrine.

---

[2] Even if the Court concludes that some of Plaintiffs' claims are properly characterized as claims for benefits under ERISA § 502(a)(1)(B), arbitration would still be unenforceable because Plaintiffs never consented to any arbitration provision under ERISA's disclosure framework. Courts have recognized that, even where arbitration provisions may theoretically apply to individual benefit claims, participants cannot be deemed to have consented to arbitration unless the provision was properly incorporated into the plan and disclosed through ERISA's required notice mechanisms. *See* Section A.2 at 7-8, *supra, Platt*, 148 F.4th at 719; *Layaou*, 238 F.3d at 209–11; *Burke*, 336 F.3d at 113–14. CVS Caremark does not contend that the governing plans were amended to include an arbitration provision or that participants received any SPD, Plan Amendment or SMM disclosing such a provision, meaning Plaintiffs cannot be deemed to have consented to arbitration of their claims. Accordingly, even the individual benefit claims pleaded in the Complaint may not be compelled to arbitration, as the arbitration provision Defendant relies on is unenforceable.

15

**C.    The Website Arbitration Clause is Unconscionable and Independently Unenforceable.**

Even if CVS Caremark could otherwise rely on the website Terms and Conditions, which it cannot, the arbitration clause would still be unenforceable because it is both procedurally and substantively unconscionable.

Under New York law, "a determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made – *i.e.*, some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Trs. of Nat'l Ret. Fund v. Fireservice Mgmt. LLC*, 384 F. Supp. 3d 412, 424 (S.D.N.Y. 2019); *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988). Procedural unconscionability concerns the contract formation process and the absence of meaningful choice, while substantive unconscionability examines whether the contract terms themselves are unreasonably favorable to one party. *Gillman,* 73 N.Y.2d at 10; *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121–22 (2d Cir. 2010). These elements operate on a sliding scale: the greater the procedural unfairness, the less substantive imbalance is required. *Gillman*, 73 N.Y.2d at 10. Both elements are present here.

**1.    The Arbitration Clause Is Procedurally Unconscionable.**

The arbitration provision at issue does not appear in any ERISA plan document but in the Terms and Conditions for creating an account on the www.caremark.com website. Plaintiffs were required to create such an account in order to obtain certain prescriptions through Caremark's mail-order pharmacy services. The arbitration clause was buried within a hyperlink to website terms that users were required to accept in order to access those services.

Courts have repeatedly recognized that such clickwrap arrangements raise significant concerns regarding meaningful assent, particularly where the clause is unrelated to the underlying

16

transaction. *See Nicosia*, 834 F.3d at 233 (arbitration cannot be compelled where a consumer lacks meaningful notice of the arbitration terms). Here, nothing in the website terms would alert a reasonable plan participant that creating an account to obtain prescription medication would require them to waive their right to pursue ERISA claims arising out of their health plan in federal court. This fact is dispositive here.

The circumstances surrounding the formation of the alleged agreement further demonstrate the absence of any meaningful choice. Plaintiffs were directed by their ERISA plan documents to use CVS Caremark's website in order to obtain essential plan information and services. Mr. Larkin's SPD instructs members to use mail order service through www.caremark.com for long-term medications. Ex. 2 at 199. The SPD states that "[b]y using this service, you can save money on your prescriptions." *Id.* The only way one can use the service is to create an account. *See* www.caremark.com; this is what appears on the home screen: one must register to advance past this screen and see anything about one's individual health plan:



The SPD also directs participants to the same website to review the list of medications covered under the plan. *Id.* at 200. In practice, participants cannot access those services—or even view plan-specific information such as the formulary—without first creating an account on the www.caremark.com website. The site *requires* users to register before they can proceed beyond the initial screen or view any information relating to their prescription coverage. *See*

17

www.caremark.com. Thus, to obtain prescriptions, review covered medications, or access plan-related information that the SPD directs them to review, participants must create a www.caremark.com account, and in so doing, must accept the website's Terms and Conditions.

Nothing in Plaintiffs' SPDs, both of which contain hundreds of pages of information, discloses that creating an account on www.caremark.com requires participants to waive their statutory right to bring ERISA claims in federal court. Nor do the SPDs indicate that accessing plan benefits or reviewing plan information through the www.caremark.com website subjects participants to a separate arbitration agreement. The absence of any such disclosure reinforces that participants lacked meaningful notice that creating a website account would purportedly impose a sweeping arbitration requirement unrelated to the ERISA plan itself. Conditioning access to prescription benefits and plan information on acceptance of unrelated website terms, including a waiver of ERISA litigation rights, illustrates precisely the type of procedural imbalance that New York's unconscionability doctrine is intended to prevent.

### 2. The Arbitration Clause Is Substantively Unconscionable.

The arbitration clause is also substantively unconscionable because it attempts to impose arbitration for disputes wholly unrelated to the website services described in the agreement. Substantive unconscionability "requires an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to one party." *Haft v. Haier US Appliance Sols. Inc.*, 578 F. Supp. 3d 436, 452 (S.D.N.Y. 2022).

The Terms and Conditions govern use of the www.caremark.com website and related services. Plaintiffs' claims, by contrast, arise from CVS Caremark's administration of ERISA-governed prescription drug benefits and its determination that Zepbound was not medically necessary. Nothing in the Terms and Conditions references ERISA, claims determinations, or plan fiduciary obligations.

Attempting to use a consumer click-wrap agreement to extinguish statutory ERISA rights unrelated to the services referenced in the website terms is itself unconscionable. *See Nicosia*, 834 F.3d at 233 (arbitration cannot be compelled where the consumer lacks clear notice and assent to the arbitration provision). The Terms and Conditions further exacerbate this imbalance by granting CVS Caremark unilateral authority to suspend or terminate the agreement—including access to the "Service"—at any time and for any reason. *See* ECF No. 57-1 at 4, 7; ECF No. 57-2 at 10. In effect, CVS Caremark reserves the right to revoke the agreement at its discretion while simultaneously requiring consumers to submit all disputes to arbitration. This one-sided arrangement underscores the substantive unconscionability of the arbitration clause.

Courts likewise refuse to compel arbitration where the dispute does not fall within the scope of the agreement the parties actually made. *See Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179–81 (2d Cir. 2021) (declining to compel arbitration where ERISA fiduciary-breach claims did not arise from the contract containing the arbitration clause and therefore fell outside the scope of the parties' agreement to arbitrate). As the Supreme Court has explained, arbitration may be compelled only where the parties agreed to arbitrate the dispute at issue. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). The FAA "applies only to '[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter *arising out of such a contract or transaction.*'" *McFarlane v. Altice USA, Inc.,* 524 F. Supp. 3d 264, 278-79 (S.D.N.Y. 2021) (quoting 9 U.S.C. § 2) (emphasis added); *see also* David Horton, *Infinite Arbitration Clauses,* 168 U. Pa. L. Rev. 633, 678-79 (2020) (discussing the rise of "infinite arbitration clauses" as in arbitration clauses coving all disputes and not limited to disputes arising from the transaction or contract at issue and  explaining that Section 2 "does not apply" to claims that do not "flow" from the contract containing the arbitration clause).

19

As the court held in *Atlice*, "[a]s a matter of contract formation, New York law, [ ]provides that 'a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties.'" *Altice*, 524 F. Supp. 3d at 276 (*quoting Greenwich Capital Fin. Prods., Inc. v. Negrin*, 903 N.Y.S. 2d 346, 348 (1st Dep't 2010)). The Court in *Altice* ultimately held the infinite arbitration clause unenforceable, declining to choose whether it was doing so based on unconscionability or contract formation, because "both ultimately lead to the same destination..." *Id.* at 276 ("no reasonable person would think that agreeing to Altice's Terms and Conditions would obligate them to arbitrate literally every possible dispute he or she might have with the service provider.").

Here, enforcing the arbitration clause would produce precisely the type of "absurd" result courts have rejected. No reasonable consumer would expect that accepting website terms in order to access prescription services would require arbitration of statutory ERISA claims concerning plan administration. *See Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016) (refusing to enforce an arbitration clause where doing so would compel arbitration of disputes unrelated to the underlying agreement).

Because the arbitration clause was imposed through a procedurally unfair process and attempts to extend far beyond the scope of the underlying agreement, it is unconscionable and unenforceable under New York law.

### D.    This Action Should Not Be Stayed.

Because Plaintiffs' claims are not subject to arbitration, the Court should deny Defendant's request to stay this action. Section 3 of the FAA requires a stay only for claims that are actually subject to arbitration. *See Duke v. Luxottica U.S. Holdings Corp.*, 167 F.4th 16, 32 (2d Cir. 2026) ("Section 3 does not extend to claims not subject to arbitration."). For the reasons above, Plaintiffs' ERISA claims cannot be compelled to arbitration and therefore provide no basis for a stay.

20

Even if the Court were to conclude that some individual claims could proceed in arbitration—and it should not for the reasons discussed above—a stay of the remaining claims would still be unwarranted. Whether to stay non-arbitrable claims is committed to the Court's discretion. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987). Courts typically grant such stays only where arbitrable claims predominate and the remaining claims are of questionable merit. *Id.* That is not the case here.

This litigation presents exigent issues affecting the health and welfare of Plaintiffs and proposed Class members. Plaintiffs' claims primarily seek relief on behalf of the ERISA plans and their participants under ERISA §§ 409 and 502(a)(2). Such claims are inherently representative and seek remedies that restore losses to the plan itself. *See Cedeno v. Sasson*, 100 F.4th 386, 403 (2d Cir. 2024). Because those claims cannot be compelled to individual arbitration under *Duke*, they will necessarily proceed in this Court regardless of whether any individual claims are arbitrated. A stay would therefore serve no practical purpose and would only delay resolution of the central issues in this important case.

### E.    Discovery Should Not Be Stayed.

CVS Caremark requests that discovery be stayed pending resolution of its motion. Courts grant such requests only upon a showing of good cause. *See* Fed. R. Civ. P. 26(c). There is no good cause here, and the mere filing of a motion to compel arbitration is insufficient to justify halting discovery. *See Kwik Ticket Inc. by Shamah v. Spiewak*, 2020 WL 5658723, at *2 (E.D.N.Y. Sept. 23, 2020).

Good cause for a stay does not exist. Plaintiffs have raised substantial disputes concerning the existence, scope, and enforceability of the alleged arbitration agreement, including whether Defendant—an alleged nonsignatory—may invoke website terms that were never incorporated into the ERISA plan documents. These issues alone weigh against staying discovery. Nor has CVS

21

Caremark shown that responding to discovery would be unduly burdensome. Defendant merely notes that arbitration may involve different discovery procedures, but that does not demonstrate that discovery in this Court would impose any meaningful burden. Indeed, because Plaintiffs' representative ERISA claims will proceed in this Court regardless of the arbitration ruling, the parties will necessarily engage in largely the same discovery.

Finally, staying discovery would prejudice Plaintiffs. This action concerns the denial of medically necessary medication and the alleged manipulation of "medical necessity" determinations for financial gain. Delaying discovery would unnecessarily prolong Plaintiffs' efforts to obtain relief and would further postpone resolution of claims affecting plan participants and beneficiaries.

## VI.    **CONCLUSION**

For the foregoing reasons, Defendant's motion to compel arbitration should be denied in its entirety. At a minimum, if the Court determines that the arbitrability of any claims cannot be resolved on the present record, the Court should permit limited discovery concerning the alleged arbitration agreement before ruling on Defendant's motion. *See Nicosia.*, 834 F.3d at 238.

Dated: March 16, 2026                                                 Respectfully,

*Julie S. Selesnick*
Julie S. Selesnick (*pro hac vice*)
**BERGER MONTAGUE PC**
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Tel. (202) 559-9740
jselesnick@bergermontague.com

D. Brian Hufford
**THE HUFFORD LAW FIRM PLLC**
76 Midland Avenue
Rye , NY 10580
Tel. (614) 371-3657
dbhufford@huffordlawfirm.org

22

Shanon J. Carson (*pro hac vice*)
Natalie Lesser (*pro hac vice*)
Amey J. Park (*pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel. (215) 875-4656
scarson@bergermontague.com
nlesser@bergermontague.com
apark@bergermontague.com

Alexandra K. Piazza (*pro hac vice*)
**BERGER MONTAGUE PC**
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Tel. (215) 875-0306
apiazza@bergermontague.com

*Attorneys for the Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to Local Rule 7.1(c), that the foregoing memorandum, which was prepared using Times New Roman 12-point proportional font, contains 6,553 words.

/s/ <u>Julie S. Selesnick</u>
Julie S. Selesnick

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, March 16, 2026, a copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF, which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

*/s/ Julie S. Selesnick*
Julie S. Selesnick
