**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DENNIS LARKIN and DANIELLE GOSLINE, individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>     v.<br><br>CAREMARK RX, L.L.C. (d/b/a CVS CAREMARK),<br><br>          Defendant. | Case No. 1:25-cv-07307<br><br><br>Oral Argument Requested |

**DEFENDANT CAREMARK RX, L.L.C.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

**Page(s)**

ARGUMENT ................................................................................................................ 1

I.    Plaintiffs agreed to arbitrate "any dispute" with Defendant. ................................. 2

    A.    An agreement to arbitrate need not be contained within ERISA plan documents to be enforceable. ....................................................................... 2

    B.    Plaintiffs' agreement to arbitrate is not a "material change to plan terms." ................................................................................................... 4

    C.    Defendant can enforce the arbitration agreement as a   third-party beneficiary. ................................................................................................ 4

II.    The arbitration agreement does not prevent Plaintiffs from pursuing any ERISA right they have asserted. ................................................................................... 6

III.    The arbitration agreement is not procedurally or substantively unconscionable. ................................................................................................... 8

    A.    Plaintiffs fail to identify any procedural unconscionability. ....................... 8

    B.    Plaintiffs fail to identify any substantive unconscionability. ...................... 9

IV.    The case should be stayed. ................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alvarez v. Experian Info. Sols., Inc.*,
661 F. Supp. 3d 18 (E.D.N.Y. 2023), *aff'd*, No. 19-CV-3343, 2024 WL 3643269
(E.D.N.Y. Aug. 2, 2024).....................................................................................................5

*Bakon v. Rushmore Serv. Ctr., LLC*,
No. 16-CV-6137, 2017 WL 2414639 (E.D.N.Y. June 2, 2017).........................................5

*Bassett v. Elec. Arts, Inc.*,
93 F. Supp. 3d 95 (E.D.N.Y. 2015)...................................................................................11

*Bird v. Shearson Lehman/Am. Express*,
926 F.2d 116 (2d Cir. 1991)..........................................................................................2, 10

*Burke v. Kodak Ret. Income Plan*,
336 F.3d 103 (2d Cir. 2003)................................................................................................4

*Cedeno v. Sasson*,
100 F.4th 386 (2d Cir. 2024)...............................................................................................6

*Chaitman v. Wolf Haldenstein Adler Freeman & Herz LLP*,
No. 03 CI. 929, 2004 WL 2471372 (S.D.N.Y. Nov. 3, 2004).............................................3

*Chevron Corp. v. Donziger*,
No. 11 CV 691, 2013 WL 4045326 (S.D.N.Y. Aug. 9, 2013) ..........................................10

*Consumer Fin. Prot. Bureau v. StratFS, LLC*,
No. 24-CV-40, 2025 WL 1466196 (W.D.N.Y. May 22, 2025)............................................6

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021)................................................................................................6

*Curtis v. JPMorgan Chase Bank, N.A.*,
No. 22 CIV. 10286, 2024 WL 283474 (S.D.N.Y. Jan. 25, 2024)........................................5

*Dellarocca v. Atl. Credit & Fin., Inc.*,
No. 19-CV-2667, 2020 WL 13553687 (E.D.N.Y. Sep. 28, 2020) ......................................5

*Duke v. Luxottica U.S. Holdings Corp.*,
167 F.4th 16 (2d Cir. 2026), *petition for cert. filed* (U.S. Mar. 26, 2026)..............................7

*Galli v. PricewaterhouseCoopers LLP Notice/Severance Pol'y as Amended & Restated
Effective Feb. 1, 2011*,
No. 19 CIV. 7224, 2020 WL 4605240 (S.D.N.Y. Aug. 11, 2020) ......................................3

*Genesco, Inc. v. T. Kaiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987)............................................................................................11

*Grasso Enters., LLC v. Express Scripts, Inc.*,
  No. 4:14CV1932, 2015 WL 10781579 (E.D. Mo. Mar. 4, 2015), *aff'd*, 809 F.3d 1033
  (8th Cir. 2016)..................................................................................................................3

*In Re Am. Int'l Grp., Inc. Sec. Litig.*,
  No. 04 CIV. 8141, 2014 WL 12652323 (S.D.N.Y. Sep. 29, 2014)............................................6

*Kim v. LG H&H USA, Inc.*,
  No. 25-CV-557, 2025 WL 1019393 (S.D.N.Y. Apr. 4, 2025) ....................................................6

*Layaou v. Xerox Corp.*,
  238 F.3d 205 (2d Cir. 2001)................................................................................................4

*Lebowitz v. Dow Jones & Co.*,
  508 F. App'x 83 (2d Cir. 2013) ..........................................................................................11

*Lee v. Burkhart*,
  991 F.2d 1004 (2d Cir. 1993)..............................................................................................7

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)............................................................................................................8

*Morelli v. Alters*,
  No. 1:19-cv-10707, 2020 WL 2306445 (S.D.N.Y. May 8, 2020)............................................11

*Mortise v. United States*,
  102 F.3d 693 (2d Cir. 1996)................................................................................................5

*Nechis v. Oxford Health Plans, Inc.*,
  328 F. Supp. 2d 469 (S.D.N.Y. 2004)..................................................................................7

*Platt v. Sodexo, S.A.*,
  148 F.4th 709 (9th Cir. 2025) .........................................................................................4, 6

*Polanco v. WPP Grp. USA, Inc.*,
  No. 24-cv-9548, 2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025)................................................2

*Shafer v. Stanley*,
  No. 20 CIV. 11047, 2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023) .......................................3, 7

*Snyder v. Fed. Ins. Co.*,
  No. 2:08–cv–153, 2009 WL 700708 (S.D. Ohio Mar. 13, 2009) ............................................4

*Sosa v. PARCO Oilfield Servs., Ltd.*,
  No. 2:05-CV-153, 2006 WL 2821882 (E.D. Tex. Sep. 27, 2006)............................................4

*Spinelli v. Nat'l Football League,*
    903 F.3d 185 (2d Cir. 2018)..........................................................................................11

*Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC,*
    102 F.4th 572 (2d Cir. 2024) ..........................................................................................2

**STATUTES**

29 U.S.C. § 1002(1) ...........................................................................................................3

29 U.S.C. § 1109.................................................................................................................8

29 U.S.C. § 1132(a)(2).................................................................................................6, 7, 8

**OTHER AUTHORITIES**

29 C.F.R. § 2520.104b-3.....................................................................................................4

29 C.F.R. § 2560.503-1.......................................................................................................3

**ARGUMENT**

Plaintiffs' Opposition concedes that Plaintiffs agreed to arbitrate "any disputes" with Defendant Caremark Rx, L.L.C. when they voluntarily created and used Caremark.com accounts and accepted the Terms and Conditions.[1]  Their various attempts to avoid their own agreement are unavailing.  Each of Plaintiffs' arguments is legally unsupported, factually misguided, or both.

First, Plaintiffs insist the arbitration agreement is unenforceable because it does not appear within their employer's plan documents.  But Plaintiffs fail to cite *any authority* requiring that an agreement to arbitrate claims arising under ERISA be located within ERISA plan documents.  Courts routinely enforce agreements to arbitrate ERISA claims that are not within ERISA plan documents—particularly where, as here, the agreement is with a third-party service provider that is not the plan sponsor.

Second, Plaintiffs contend Defendant cannot enforce the agreement because it is not a party to the agreement. Plaintiffs ignore well-settled law regarding the rights of third-party beneficiaries. As an intended third-party beneficiary of the arbitration agreement, Defendant has standing to enforce it.

Third, Plaintiffs' effective-vindication argument must be rejected.  Plaintiffs do not bring a claim under ERISA § 502(a)(2).  And their Complaint confirms they have not brought a representative action seeking relief "on behalf of" their plans (or any other plans).  The caselaw Plaintiffs rely upon has no application here.

Fourth, and finally, Plaintiffs' unconscionability arguments fail.  Plaintiffs' argument that they are required to arbitrate in order to access their pharmacy benefits rests on a false factual predicate—the arbitration agreement is itself optional, as is registering for an online account with

---

[1] As in its Motion to Compel Arbitration, for clarity, this reply will use "Caremark" to refer to CaremarkPCS Health, L.L.C. and "Defendant" to refer to Caremark Rx, L.L.C.

Caremark.com. Plaintiffs offer no evidence to support their argument that they were unconscionably "required" to submit to arbitration to access their benefits.

Because Plaintiffs assented to a valid arbitration agreement and identify no basis to avoid its enforcement, this Court should compel arbitration and stay this action.

**I.     Plaintiffs agreed to arbitrate "any dispute" with Defendant.**

**A.     An agreement to arbitrate need not be contained within ERISA plan documents to be enforceable.**

Citing nothing, Plaintiffs declare that, because Plaintiffs' relationship with Defendant arises from ERISA-governed plans, Defendant cannot enforce an arbitration agreement unless it appears within the plan document. (ECF No. 59 ("Opp.") at 7.) This argument finds no support in ERISA's or the caselaw. Neither of the cases Plaintiffs reference remotely support such a requirement. (*Id*. at 8 (citing *Polanco v. WPP Grp. USA, Inc.*, No. 24-cv-9548, 2025 WL 3003060, at \*3 (S.D.N.Y. Oct. 27, 2025), and *Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 597 (2d Cir. 2024)).) Instead, Plaintiffs cite them for the unremarkable proposition that fiduciaries must administer plans in accordance with ERISA plan terms. *Id.* But nothing is inconsistent about the terms of Plaintiffs' plans and their separate agreement to arbitrate. And nothing in *Polanco* or *White Oak* suggests an agreement to arbitrate that encompasses ERISA claims must be included in an ERISA plan document.

Moreover, Plaintiffs fail to recognize that ERISA is *not* exempt from the rule that parties are free agree to arbitrate their disputes. *See Bird v. Shearson Lehman/Am. Express*, 926 F.2d 116, 122 (2d Cir. 1991) ("[S]tatutory claims arising under ERISA may be the subject of compulsory arbitration . . . [and] the FAA requires courts to enforce agreements to arbitrate such claims."). Nothing in ERISA, its regulations, or any other authority mandates that such agreements be included in plan documents. *See id.* (enforcing agreement to arbitrate statutory ERISA claims

contained within a "Customer Agreement" between plan participant and plan fiduciary). This is particularly true where the contracting party—here, Caremark—is not the plan sponsor and has no authority to amend plan documents.  (*See* ECF No. 59-2 at 6, 69, 168-69, 186; ECF No. 59-3 at 9, 177, 233.)  For these reasons, courts in the Second Circuit regularly enforce agreements to arbitrate ERISA claims where the agreement was included in a separate, non-plan document.  *See, e.g.*, *Shafer v. Stanley*, No. 20 CIV. 11047, 2023 WL 8100717, at \*1, \*29 (S.D.N.Y. Nov. 21, 2023) (granting motion to compel arbitration of ERISA claims where agreement was contained in non-plan documents); *Galli v. PricewaterhouseCoopers LLP Notice/Severance Pol'y as Amended & Restated Effective Feb. 1, 2011*, No. 19 CIV. 7224, 2020 WL 4605240, at \*1, \*12-13 (S.D.N.Y. Aug. 11, 2020) (same); *Chaitman v. Wolf Haldenstein Adler Freeman & Herz LLP*, No. 03 CI. 929, 2004 WL 2471372, at \*1, \*4-5 (S.D.N.Y. Nov. 3, 2004) (same).

Plaintiffs also argue that "the arbitration provision does not comply with ERISA regulations." (Opp. at 8 (citing 29 C.F.R. § 2560.503-1 (2005).)  But the cited regulation applies to the "claims procedures of a group health plan." 29 C.F.R. § 2560.503-1(c); *see* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan").  As a pharmacy benefit manager ("PBM"), the cited regulation does not apply to Defendant. *See Grasso Enters., LLC v. Express Scripts, Inc.*, No. 4:14CV1932, 2015 WL 10781579, at \*4 (E.D. Mo. Mar. 4, 2015) (recognizing the lack of authority suggesting that a PBM is required to comply with ERISA's claims regulations), *aff'd*, 809 F.3d 1033 (8th Cir. 2016).  Moreover, the regulation is irrelevant because it governs the contents of a *group health plan*, not the contents of an agreement between an individual and a service provider.  Plaintiffs offer no explanation as to how this regulation applies to the voluntary arbitration agreement here.  And their cited caselaw does not suggest it does, as both cases involved an arbitration agreement contained within an ERISA plan.  (*See* Opp. at 9 (citing *Snyder v. Fed.*

3

*Ins. Co.*, No. 2:08–cv–153, 2009 WL 700708, at *6 (S.D. Ohio Mar. 13, 2009); *Sosa v. PARCO Oilfield Servs., Ltd.*, No. 2:05-CV-153, 2006 WL 2821882, at *7 (E.D. Tex. Sep. 27, 2006).)

### B.  Plaintiffs' agreement to arbitrate is not a "material change to plan terms."

Next, Plaintiffs argue that the arbitration agreement does not comply with ERISA's requirement that all "material changes to plan terms" be made through a "Summary of Material Modifications" ("SMM") or "updated [Summary Plan Description ("SPD")]." (Opp. at 9.) But an arbitration agreement between parties outside the context of any ERISA plan is not subject to ERISA's SMM or SPD requirements. *See* 29 C.F.R. § 2520.104b-3 (explaining when a plan administrator must provide an SMM and SPD). Because the arbitration agreement does not "change" any of the "plan terms," the SMM and SPD regulations simply do not apply. *See id.*

Moreover, Plaintiffs cite no case holding that an arbitration agreement between a service provider and an individual plan member is a "material change" to a "plan term." Neither *Burke* nor *Layaou* involved an arbitration agreement. *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103 (2d Cir. 2003); *Layaou v. Xerox Corp.*, 238 F.3d 205 (2d Cir. 2001). Although *Platt* involved an arbitration agreement, the issue was not that the moving party failed to include the arbitration agreement in an SMM or SPD. *Platt v. Sodexo, S.A.*, 148 F.4th 709, 718 (9th Cir. 2025). The issue was whether the plaintiff consented to the arbitration agreement as the FAA required. *Id.* at 718-19. Here, there is no dispute that Plaintiffs expressly consented to the arbitration agreement.

### C.  Defendant can enforce the arbitration agreement as a third-party beneficiary.

Next, Plaintiffs assert that even if a valid arbitration agreement existed, Defendant cannot enforce it because the agreement was made between Plaintiffs and Caremark, not Defendant. (Opp. at 11-12.) Plaintiffs insist that Defendant can only enforce an agreement if it establishes incorporation by reference, assumption, agency, veil-piercing or alter ego, and estoppel. (*Id.*) In doing so, Plaintiffs overlook well-established precedent regarding the rights of intended third-party

4

beneficiaries to enforce contracts.  *See Curtis v. JPMorgan Chase Bank, N.A.*, No. 22 CIV. 10286, 2024 WL 283474, at *6 (S.D.N.Y. Jan. 25, 2024) (holding that defendant was "entitled to enforce the arbitration agreement as a third-party beneficiary.").  A third-party beneficiary must establish: (1) there is a valid, binding contract, (2) the contract was intended for the third party's benefit, and (3) the benefit is sufficiently immediate.  *Mortise v. United States*, 102 F.3d 693, 697 (2d Cir. 1996).

Here, the arbitration agreement expressly provides for arbitration of disputes between Plaintiffs and Caremark's "affiliates."  (ECF No. 57-2 at 14.)  This provision creates standing for "affiliates" to enforce the agreement as a third-party beneficiary.  *See, e.g.*, *Dellarocca v. Atl. Credit & Fin., Inc.*, No. 19-CV-2667, 2020 WL 13553687, at *3 (E.D.N.Y. Sep. 28, 2020) (ruling that an arbitration agreement providing for arbitration of claims related to affiliated companies to "expressly contemplate[] enforcement by third-party affiliates"); *Bakon v. Rushmore Serv. Ctr., LLC*, No. 16-CV-6137, 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017) (holding that affiliate of signatory to an arbitration agreement contemplating enforcement by "affiliates" could compel arbitration as third-party beneficiary); *Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 27 (E.D.N.Y. 2023) (ruling that affiliate of signatory to an arbitration agreement could enforce the agreement "under a third-party beneficiary theory"), *aff'd*, No. 19-CV-3343, 2024 WL 3643269 (E.D.N.Y. Aug. 2, 2024).

Again, citing nothing, Plaintiffs argue that Defendant is not an "affiliate" of Caremark because it is a parent.  (Opp. at 12.)  Plaintiffs are wrong—parent corporations are "affiliates." *See Affiliate*, Black's Law Dictionary (12th ed. 2024) ("A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation."); *Consumer Fin. Prot. Bureau v. StratFS, LLC*, No. 24-CV-40, 2025 WL 1466196,

5

at *6 (W.D.N.Y. May 22, 2025) (citing Black's Law Dictionary for the term "affiliate" and finding entities were affiliates of parent corporation); *Kim v. LG H&H USA, Inc.*, No. 25-CV-557, 2025 WL 1019393, at *5 (S.D.N.Y. Apr. 4, 2025) (finding parent was affiliate of its subsidiary and "entitled to enforce" subsidiary's arbitration agreement as "a third-party beneficiary"); *In Re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 CIV. 8141, 2014 WL 12652323, at *4 (S.D.N.Y. Sep. 29, 2014).

## II.  The arbitration agreement does not prevent Plaintiffs from pursuing any ERISA right they have asserted.

Plaintiffs suggest that the arbitration agreement is invalid because such an agreement would prevent them from "effectively vindicating" their rights under ERISA. (*See* ECF No. 44 at 1-2; Opp. at 13-15.)  As explained in Defendant's Motion, Plaintiffs' caselaw is inapposite and distinguishable.  (ECF No. 56 ("Mot.) at 19-23.) All the cases Plaintiffs cite applying the effective-vindication doctrine have done so where the plaintiff has asserted a "claim under ERISA § 502(a)(2)."  *See Cedeno v. Sasson*, 100 F.4th 386, 396-400 (2d Cir. 2024) (applying the effective-vindication doctrine only to a § 502(a)(2) claim); *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 188 n.2 (2d Cir. 2021) (same); *Platt v. Sodexo, S.A.*, 148 F.4th 709, 721-22 (9th Cir. 2025) (same); *Duke v. Luxottica U.S. Holdings Corp.*, 167 F.4th 16, 29-31 (2d Cir. 2026) (same), *petition for cert. filed* (U.S. Mar. 26, 2026).

Plaintiffs concede that, in the ERISA context, the effective-vindication doctrine applies *only* to a claim brought under ERISA § 502(a)(2). (*See* Opp. at 19-23.)  Yet, on its face, Plaintiffs' Complaint does not assert any claim under § 502(a)(2), and Plaintiffs have confirmed through briefing that they bring no claim under § 502(a)(2).  (*See* ECF No. 48 at 9 (referring only to a *singular* claim for breach of fiduciary duty, brought under § 502(a)(3)—not § 502(a)(2)); *see generally* Compl.)  Because Plaintiffs bring no claims under § 502(a)(2), the analysis ends there. *See Shafer*, 2023 WL 8100717, at *21-26 ("Having failed to allege a true § 502(a)(2) claim,

6

Plaintiff will not be heard to complain that claims under § 502(a)(2) are non-arbitrable.").

Plaintiffs also concede that a claim under § 502(a)(2) must seek plan-wide relief in a representative capacity "on behalf of the plan." (*See* Opp. at 13); *Nechis v. Oxford Health Plans, Inc.*, 328 F. Supp. 2d 469, 477 (S.D.N.Y. 2004) (a § 502(a)(2) claim must "be brought in a representative capacity on behalf of the plan as a whole"); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993). Again, however, the Complaint is clear that Plaintiffs bring each count "individually and on behalf of the Class" and not "on behalf of" any plan. (*See* Compl. ¶¶ 161, 169, 176, 183, 187, 189.) Indeed, the class consists of "any *member* of an ERISA-governed" health plan, not the plans themselves. (*Id.* ¶ 150.) Plaintiffs do not address their putative class or explain how they could possibly seek relief "on behalf of" one or more unidentified ERISA plans in any representative capacity.

Plaintiffs' entire argument appears instead to hinge on a passing reference to ERISA § 409 in their Complaint. (Opp. at 13-14.) Plaintiffs insist that the arbitration agreement effectively bars them from vindicating their ERISA rights because, according to their Opposition, they "primarily seek relief on behalf of the ERISA plans and their participants under § 409" and § 409 authorizes plaintiffs to "restore losses to the plan." (*Id.* at 13-14, 21.) But, despite what relief is authorized by § 409, Plaintiffs' "Requested Relief" seeks none of it. (*See* Mot. at 19-23.). As explained in Defendant's Motion, Plaintiffs ***cannot*** seek such plan-wide relief, and in fact, they ***do not*** seek plan-wide relief.[2]  (*See id.* at 21.)

Plaintiffs nevertheless insist they seek certain "equitable relief" under ERISA § 409 such

---

[2] Furthermore, insofar as Plaintiffs reference "§ 502(a)" once in their Complaint, that is insufficient to bring a claim under § 502(a)(2), as § 502(a) contains multiple distinct causes of action authorizing different remedies, including § 502(a)(3), which Plaintiffs specifically asserted in the Complaint and which itself authorizes equitable relief.  (*See* Compl. ¶¶ 186-89.)

7

as "restitution, surcharge, and other remedies." (Opp. at 14.) As the Supreme Court has held, however, all the remedies available under § 409—including restitution, surcharge, and other equitable relief—must be asserted on behalf of the plan. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139-42 (1985). Again, Plaintiffs do not and cannot seek relief on behalf of plan. Their reliance on these other remedies listed in § 409 is, therefore, unavailing.

At bottom, Plaintiffs fail to explain how the arbitration agreement has prevented them from vindicating their rights under § 502(a)(2) and § 409 where they do not (and unquestionably cannot) seek plan-wide relief on behalf of any plan.

### III.    **The arbitration agreement is not procedurally or substantively unconscionable.**

#### A.    **Plaintiffs fail to identify any procedural unconscionability.**

Plaintiffs complain that the arbitration agreement is procedurally unconscionable because they were unable to access their prescription drug benefits without creating a Caremark.com account and thereby agreeing to arbitration. (Opp. at 17-18.) That is incorrect. First, the arbitration agreement itself is optional. The plain text of the arbitration agreement explicitly provides Plaintiffs with instructions for opting out of arbitration. (ECF No. 57-2 at 19 ("**Opt-out.** You have the right to opt out of arbitration by sending your personally signed written notice of your decision to opt out to [Caremark].").) Plaintiffs chose not to exercise this opt-out right.

Second, Plaintiffs are incorrect that Plaintiffs were "required" to create Caremark.com accounts to obtain prescriptions through the mail-order service. (Opp. at 17-18.) Plaintiffs' lone supporting citation—the Publicis SPD—confirms that argument is incorrect. (*See id.* at 17-18.) In fact, the Publicis SPD provides that participants can access mail-order pharmacy services through the mail by "Complet[ing] the CVS/Caremark Mail Service Order Form (available on the Guides/Forms page of PublicisConnections.com)." (ECF No. 59-3 at 207.) The SPD also provides options for accessing other services, including pharmacy information, by logging into

8

Caremark.com *or* calling Caremark's phone number. (*Id.* at 205, 210.) Thus, the Publicis plan's plain terms confirm that creating a Caremark.com account, and accepting the terms and conditions, was entirely optional.

Further, Plaintiffs assert they lacked legally sufficient notice of the arbitration agreement because the arbitration clause was "buried" within the website terms. (Opp. at 16.) Not so. In both versions of the agreement, Plaintiffs received notice of the arbitration agreement on the *first* page of the terms and conditions, both times appearing in **BOLD, ALL-CAPITAL FONT**. (ECF No. 57-1 at 2, No. 57-2 at 2.) Plaintiffs cannot seriously contend the agreement was "buried." (Opp. at 16.) Further, as Defendant argued with citations to binding authority, the Second Circuit repeatedly has held that these types of web-based agreements are valid and enforceable. (Mot. at 2, 11-14 (citing cases).) Plaintiffs do not attempt to distinguish this controlling authority.

Finally, Plaintiffs again complain that neither the arbitration agreement nor the SPD specify that the arbitration agreement applies to ERISA claims. (Opp. at 17-18.) Plaintiffs cite no authority supporting this contention, nor could they. (*See id.*); *see Bird*, 926 F.2d at 122 (holding "that statutory claims arising under ERISA may be the subject of compulsory arbitration.")

**B.      Plaintiffs fail to identify any substantive unconscionability.**

Plaintiffs argue that the arbitration agreement is unconscionable because it "attempts to impose arbitration for disputes wholly unrelated to" the website services. (Opp. at 18.) This argument appears to take issue with the broad nature of the arbitration agreement but fails to cite authority suggesting that the scope is unconscionable.[3] (*See id.* at 18-19.)

---

[3] Insofar as Plaintiffs imply that the agreement contains an unenforceable "infinite arbitration clause," Plaintiffs have waived this argument by failing to explain why that is so. (Opp. at 19-20); *Chevron Corp. v. Donziger*, No. 11 CV 691, 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013) (recognizing that a party waives an argument by failing to develop it with case authority). Regardless, the doctrine applies only where the claim at issue lacks any nexus to the arbitration agreement. For the reasons stated in Defendant's Motion, Plaintiffs' claims fall squarely within

Plaintiffs also contend that the arbitration agreement is "one-sided" because Defendant has "unilateral authority to suspend or terminate the agreement." (Opp. at 19.) Again, Plaintiffs cite no caselaw. A party's unilateral right to modify an agreement, without more, does not render the agreement unenforceable. *See Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 84 (2d Cir. 2013) ("Under New York law, a contract is not illusory merely because its terms give discretion to one party to the contract" as "every contract encompasses the implied duty of good faith and fair dealing."); *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 106 (E.D.N.Y. 2015) (collecting cases). And in all events, Plaintiffs' substantive-unconscionability argument fails because under "New York law, a party can ratify an unconscionable agreement, and does so by accepting benefits under the agreement with knowledge of its terms instead of promptly repudiating it." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (citations omitted).

## IV.  <u>The case should be stayed.</u>

Plaintiffs' contention that this case should not be stayed is based entirely on their underlying argument that their claims are not subject to arbitration. (Opp. at 20-21.) That is incorrect for the reasons outlined in Defendant's Motion and above. Likewise, Plaintiffs do not have any non-arbitrable claims in this action, and thus *Genesco, Inc. v. T. Kaiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987) is inapposite. Moreover, *Genesco* does not stand for the proposition that courts "typically grant such stays only" when these conditions are present, only that "broad stay orders are *particularly appropriate* if arbitrable claims predominate the lawsuit and the non-arbitrable claims are of questionable merit." *Id.* (emphasis added). Indeed, even if the Court were to find some claims were not subject to arbitration, "a discretionary stay is particularly appropriate

---

the scope of the arbitration agreement, as they arise out of the relationship between them and Defendant's provision of PBM services. (*See* Mot. at 17-19.)

where there is significant factual overlap between the remaining claims and the arbitrated claims." *Morelli v. Alters*, No. 1:19-cv-10707, 2020 WL 2306445, at *4 (S.D.N.Y. May 8, 2020).

Alternatively, discovery should be stayed. Plaintiffs ignore the caselaw in Defendant's Motion, demonstrating that courts in the Second Circuit routinely stay discovery pending the resolution of a motion to compel arbitration without investigating the three-part test for ordinary motions to stay discovery pending a dispositive motion, precisely because the motion may "remove the litigation to another forum." *Ahmad v. Day*, No. 20 Civ. 4507, 2021 U.S. Dist. LEXIS 32401, at *2 (S.D.N.Y. Feb. 22, 2021) (citations omitted); (Opp. at 21-22; Mot. at 24-25.) Rather, Plaintiffs contend that the existence of arbitration agreement disputes weighs against staying discovery. (Opp. at 21.) But Plaintiffs have not argued that additional discovery is needed to resolve Defendant's Motion. (*See id.* at 21-22.) Contrary to Plaintiffs' characterization, Defendant articulated the burden if discovery is not stayed—forcing a defendant to spend time and resources on costly discovery under the Federal Rules defeats a *key purpose* of arbitration agreements. (Mot. at 25.) As the arbitrability decision is a threshold issue, staying discovery promotes efficiency and eliminates duplicative discovery efforts when parties ultimately are ordered to arbitration. (*Id.*)

Dated: March 30, 2026

Respectfully submitted,

/s/ Steven Penaro
**ALSTON & BIRD LLP**
Steven Penaro
Bar No. 4765046
90 Park Ave.
New York, NY 10016
Tel: (212) 210-9460
steve.penaro@alston.com

Kelsey Kingsbery (*pro hac vice*)
555 Fayetteville Street, Suite 600
Raleigh, NC  27601
Tel: (919) 862-2227
kelsey.kingsbery@alston.com

Emily S. Costin (*pro hac vice*)
The Atlantic Building
950 F. Street, NW
Washington, DC 20004-1404
Tel: (202) 239-3300
Fax: (202) 239-3333
emily.costin@alston.com

*Attorneys for Defendant*
CAREMARK RX, L.L.C. (d/b/a
CVS CAREMARK)

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rule 7.1(c), that the foregoing memorandum, which was prepared using Times New Roman 12-point proportional font, contains 3,489 words.

/s/ Steven Penaro
**ALSTON & BIRD LLP**
Steven Penaro
Bar No. 4765046
90 Park Ave.
New York, NY 10016
Tel: (212) 210-9460
steve.penaro@alston.com

13