ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/26/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNIS LARKIN and DANIELLE GOSLINE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CAREMARK RX, L.L.C. (d/b/a CVS CAREMARK),

Defendant.

25 Civ. 7307 (LLS)

OPINION & ORDER

Plaintiffs Dennis Larkin and Danielle Gosline bring this action on behalf of themselves and similarly situated individuals against defendant Caremark Rx, L.L.C. under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), alleging that defendant breached its fiduciary duty and engaged in prohibited transactions. Defendant moves to compel plaintiffs to individual arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (Dkt. No. 55) or, in the alternative, to dismiss plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (Dkt. No. 38). For the following reasons, defendant's motion to compel arbitration is denied, and defendant's motion to dismiss is granted in part and denied in part.

**BACKGROUND**

The following facts are taken from plaintiffs' complaint

(Dkt. No. 1) and the documents incorporated therein. They are presumed true for the purposes of defendant's motion to dismiss. Facts regarding the arbitration agreement are taken from defendant's memorandum in support of its motion to compel arbitration (Dkt. No. 56) and plaintiffs' opposition to that motion (Dkt. No. 59).

## I. The Parties

### A. Plaintiffs

Plaintiffs Dennis Larkin and Danielle Gosline are beneficiaries of health plans sponsored by their respective employers, Publicis, Inc. ("Publicis") and Hillside Children's Center ("Hillside"). Compl. at 113, 123. Through their employer-sponsored health plans, plaintiffs receive prescription drug benefits from CVS Caremark, which serves as the plans' Pharmacy Benefit Manager ("PBM"). Id. ¶¶ 1, 12, 21. As PBM, CVS Caremark determines plaintiffs' drug coverage and adjudicates their appeals according to the terms of their respective plans, as laid out in each plan's Summary Plan Description ("SPD"). Id. ¶¶ 118, 147; see Publicis SPD (Dkt. No. 42-3); Hillside SPD Am. (Dkt. No. 42-6).

Plaintiffs were prescribed the weight management drug Zepbound by their physicians and received coverage for the drug from CVS Caremark until the summer of 2025. Compl. ¶¶ 9-23. Specifically, Larkin used Zepbound for the treatment of obesity

and sleep apnea. Id. ¶¶ 11. His coverage for Zepbound was first denied on June 19, 2025, and twice again upon appeal, resulting in the exhaustion of his administrative appeals. Id. ¶¶ 13-18. Gosline used Zepbound to treat obesity after trying other medications that resulted in intolerable side effects. Id. ¶¶ 20, 69. Her coverage was first denied on July 1, 2025. Id. ¶ 23. She appealed once and was denied, which CVS Caremark indicated exhausted her appeals since her request was deemed "urgent." Id. ¶¶ 24-25, 111.

**B. Defendant**

Defendant Caremark Rx, L.L.C. is a wholly owned subsidiary of CVS Health Corporation. Compl. ¶ 39. Plaintiffs allege that defendant does business under the brand "CVS Caremark," which is the entity named in plaintiffs' SPDs and the denial of benefits letters they received. Id.; see Publicis SPD; Hillside SPD Am.; Larkin Denial Letter (Dkt. No. 42-7); Gosline Denial Letter (Dkt. No. 42-8). However, defendant alleges that it is merely the parent company of the plans' actual PBM, CaremarkPCS Health, L.L.C., and therefore it is not involved in plaintiffs' claims determinations.[1] Mem. Mot. Dismiss at 12-14 (Dkt. No. 41).

[1] Due to this dispute, this Opinion uses "defendant" to refer to Caremark Rx, L.L.C. and "CaremarkPCS" to refer to CaremarkPCS Health, L.L.C. It uses "CVS Caremark" to refer to the entity undertaking the alleged actions.

## II. Allegations

In addition to making beneficiaries' claims determinations, the role of a PBM includes establishing lists of drugs known as "formularies" that specify which drugs are available under a plan at a higher coverage level or with fewer administrative requirements. Compl. ¶ 3; see Publicis SPD at 195, 201. In designing formularies, PBMs sometimes enter rebate agreements with drug manufacturers through which they agree to prefer the manufacturer's brand in exchange for rebate payments. Compl. ¶ 6, 86.

Plaintiffs allege that CVS Caremark or its parent company, CVS Health Corporation, entered into a rebate agreement with drug manufacture Novo Nordisk on or around May 1, 2025. Id. ¶¶ 7, 90. Novo Nordisk manufactures the weight management drug Wegovy, which is a competitor to Zepbound. Id. ¶ 89. Under the agreement, CVS Caremark favors Wegovy to the exclusion of Zepbound, and in return, earns rebates on sales of Wegovy. Id. ¶ 86. Accordingly, CVS Caremark removed Zepbound from its formularies effective July 1, 2025. Id. ¶ 92. Plaintiffs allege that removing Zepbound and substituting Wegovy "caused the plans for which [CVS Caremark] administers pharmacy claims to engage in transactions" that impermissibly benefitted the corporation at the expense of plaintiffs. Id. ¶ 172. Plaintiffs also allege that this removal violated CVS Caremark's fiduciary duty of

loyalty. Id. ¶ 30.

Plaintiffs separately allege that following the rebate deal, CVS Caremark improperly denied coverage for Zepbound in violation of its fiduciary duties and the plans' terms. Id. ¶¶ 165, 177. Plaintiffs allege that, regardless of its formulary status, Zepbound is covered by their plans because it is medically necessary. Id. ¶¶ 27, 112-29. However, upon plaintiffs' appeals, CVS Caremark affirmed its denials in form letters stating that Zepbound was not medically necessary. Id. ¶¶ 102-04, 109-110. Plaintiffs allege that CVS Caremark invoked medical necessity without considering current medical guidelines and the health records they submitted as required by their plans. Id. ¶¶ 29, 130-32.

Moreover, plaintiffs allege that the alternative medications CVS Caremark offered — Wegovy and Mounjaro — do not meet the plans' coverage requirements, and therefore are inadequate formulary substitutions made solely for CVS Caremark's own financial interest. Id. ¶¶ 118-120, 126-28.

## III. Arbitration Agreement

There is no arbitration provision in the documents governing plaintiffs' plans, namely the SPDs. Opp. Mot. Compel at 8. Instead, the arbitration agreement defendant moves to enforce is contained in the Terms and Conditions of defendant's website and mobile application, Caremark.com (the "Terms"). Mem.

Mot. Compel at 3-7; see also 2024 Terms (Dkt. No. 57-1), 2025 Terms (Dkt. No. 57-2). In order to create or log in to a Caremark.com account, users must click a "Continue" button directly beneath the notice "By continuing, you agree to our Terms of Use, Privacy Policy, and HIPAA Notice of Privacy Practices." Mem. Mot. Compel at 6. Both plaintiffs created Caremark.com accounts in 2024 and continued to access those accounts throughout 2025. Id. at 3, 5.

The arbitration provision contained in the 2025 Terms, to which plaintiffs most recently agreed, states: "You and CVS Caremark agree that any dispute (defined below) shall be resolved by final and binding individual arbitration except as otherwise provided herein." 2025 Terms at 13. As relevant, "CVS Caremark" is defined as "CaremarkPCS Health, L.L.C. [and] its subsidiaries or affiliates." Id. The provision defines "dispute" as:

> For the purposes of this Section, "Dispute" shall include, but is not limited to, any claims or controversies between you and CVS Caremark that are related in any way to this Agreement, including, but not limited to, your use of the Services, sales, returns, refunds, cancellations, defects, policies, privacy, advertising, and/or any communications between you and CVS Caremark, whether occurring on the Services, in-store, or otherwise, even if the Dispute arises after the termination of your relationship with CVS Caremark. "Dispute" also includes, without limitations, claims that: (a) you bring against CVS Caremark; (b) CVS Caremark brings against you; (c) in any way relate to or arise out of any aspect of the relationship between you and CVS Caremark, whether based in contract, tort, statute, fraud, misrepresentation, advertising claims, or any other legal theory; (d) arose before you entered

> into this Agreement or out of a prior agreement with CVS Caremark.

Id. at 14.

## MOTION TO COMPEL ARBITRATION

"Courts in this district will resolve a motion to compel arbitration prior to resolving a motion to dismiss for lack of personal jurisdiction." Lewis v. ANSYS, Inc., 2021 WL 1199072, at *3 (S.D.N.Y. Mar. 30, 2021). Accordingly, this Opinion addresses defendant's motion to compel arbitration first. Upon finding that the case should not be compelled to arbitration, the Court then addresses defendant's motion to dismiss for lack of personal jurisdiction and failure to state a claim.

### I. Legal Standard

The Federal Arbitration Act ("FAA") "provides that a written provision in a contract to settle by arbitration a controversy thereafter arising out of the contract shall be valid, irrevocable, and enforceable." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 228 (2d Cir. 2016) (cleaned up) (citing 9 U.S.C. § 2). Under the FAA, a party to an arbitration agreement may petition a district court for an order that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If the court is satisfied that the parties have agreed to arbitrate the issues presented and that there are no defects in

the agreement's formation or validity, then the court must enforce the agreement to arbitrate. Silver v. Nissan-Infiniti LT, LLC, 724 F. Supp. 3d 217, 222 (S.D.N.Y. 2024).

In deciding motions to compel arbitration, the court applies a standard similar to that used on summary judgment. Nicosia, 834 F.3d at 229. That is, the court must consider all relevant, admissible evidence and draw all reasonable inferences in favor of the non-moving party. Id.

## II. Analysis

In determining whether a dispute is arbitrable, courts consider "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." Holick v. Cellular Sales of N.Y., LLC, 802 F.3d 391, 394 (2d Cir. 2015). "The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 101-02 (2d Cir. 2022). "Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid." Id. at 102 (internal citation omitted).

**A. Agreement to Arbitrate**

Defendant has "met its initial burden of demonstrating that an agreement to arbitrate was made" by producing the Caremark.com Terms' arbitration provision and evidence that plaintiffs accepted the Terms by creating and continuing to use their accounts. Silver, 724 F. Supp. 3d at 223 (internal citation omitted).

Plaintiffs' argument that they have no agreement to arbitrate with defendant since it is not a party to the Terms is unavailing.[2] Under New York law, a third-party beneficiary may compel arbitration where it is clear from the plain language of the contract that the parties intended to include the beneficiary. Picha v. Gemini Tr. Co., LLC, 2024 WL 967182, at *11 (S.D.N.Y. Mar. 5, 2024). Here, the Terms clearly intend to include defendant by the enumeration of "affiliates," which is commonly understood to embrace parent corporations. 2025 Terms

---

[2] Plaintiffs also dispute the existence of an agreement to arbitrate between themselves and defendant on the bases that the ERISA plan documents do not contain an arbitration provision and plaintiffs were never notified of a material change to their rights as required by ERISA. Opp. Mot. Compel 7-10. The Court does not address these arguments here because they do not dispute the validity of the agreement proffered by defendant. They are instead arguments that the proffered agreement, if valid, is not appliable for statutory reasons. Ultimately, the Court need not address these arguments because it finds the agreement's scope cannot cover plaintiffs' ERISA claims.

at 13; see Affiliate, Black's Law Dictionary (12th ed. 2024). Thus, defendant may enforce the agreement to arbitrate with plaintiffs.

**B. Scope of the Agreement**

Having found that an agreement to arbitrate exists between the parties, the Court must decide whether "the parties agreed to arbitrate that dispute." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010) (emphasis in original).

Defendant argues that the Court should apply a presumption of arbitrability in order to give "the broad nature of the arbitration provision . . . full effect." Mem. Mot. Comp. at 16. However, courts in this Circuit "no longer rely on broad arbitration clauses to presume arbitrability in the first instance." Silver, 724 F. Supp. 3d at 222 (citation omitted). Instead, courts "first turn to 'ordinary principles of contract interpretation' to assess whether the 'particular dispute is covered by the language to which the parties agreed.'" Id. (citing Local Union 97 v. Niagara Mohawk Power Corp., 67 F.4th 107, 114 (2d Cir. 2023)). The main concern in deciding an arbitration agreement's scope is to faithfully reflect the reasonable expectations of the parties. Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 28 (2d Cir. 1995).

i. Required nexus

The FAA enforces only "agreements to arbitrate controversies that 'arise out of' the parties' contractual relationship." Davitashvili v. Grubhub Inc., 131 F.4th 109, 119 (2d Cir. 2025) (citation omitted). The Caremark.com Terms incorporate this limitation in the first sentence defining "dispute" by limiting the arbitration provision's application to disputes "that are related in any way to this agreement." 2025 Terms at 14. Yet, defendant ignores this relational requirement each time it quotes this sentence. See, e.g., Mem. Mot. Compel at 16 ("By its clear and plain language, the provision applies [sic] 'any claims or controversies between you and CVS Caremark.'"). Instead, defendant adopts the broader scope of the definition's second sentence, which purports to cover any claims that "you bring against CVS Caremark" or "in anyway relate to or arise out of any aspect of the relationship between you and CVS Caremark." 2025 Terms at 14; see Mem. Mot. Compel at 16-17.

Defendant is wrong to ignore the relational requirement of the Terms' first sentence and wrong to rely on the second sentence at all. In addition to contradicting the FAA's controlling nexus requirement, such expansive application is not supported by this Circuit's recent case law. Courts in this Circuit applying New York law will only mandate arbitration for

claims related to the underlying contract. See, e.g., McFarlane v. Altice USA, Inc., 524 F. Supp. 3d 264, 277 (S.D.N.Y. 2021) ("[U]nder New York law, the Arbitration Provision cannot be applied to claims lacking a nexus to the [underlying] cable service agreement."). Thus, inasmuch as defendant argues that the arbitration provision covers plaintiffs' claims without a nexus to the Caremark.com Terms, that argument fails.

ii. Plaintiffs' "use of the Services"

Defendant alternatively argues that "Plaintiffs' factual allegations demonstrate that their claims arise from 'Services' — prescription drug benefits, including information regarding those benefits — provided by Caremark" and "communications with Caremark" about those benefits. Mem. Mot. Compel at 18.

However, the "Services" defined by the Terms are different from the services from which plaintiffs' claims arise. The "Services" at issue in the Terms are "www.caremark.com (the 'Site'), CVS/Caremark mobile app (the 'Caremark App'), other sites where this Agreement is posted, or any services, content, information, or goods provided through or in connection with the Site, the Caremark App, or by or on behalf of CaremarkPCS Health L.L.C. or one of its subsidiaries or affiliates." 2025 Terms at 1. In contrast, plaintiffs' claims are based on the rights defined in their plans, CVS Caremark's interpretation of those

rights, and acts it allegedly took to the detriment of their plans. These services are not meaningfully provided "through or in connection with" Caremark.com — plaintiffs do not even allege that they submitted requests for coverage or received denials via their Caremark.com accounts.[3] Instead, plaintiffs' use of Caremark.com, which defendant insists is "entirely optional" (Reply Mot. Compel at 9 (Dkt. No. 60)), is "purely coincidental" to their claims that CVS Caremark engaged in prohibited transactions and violated its fiduciary duties. Davitashvili, 131 F.4th at 119-20 (2d Cir. 2025) (denying motion to compel arbitration based on food delivery app's terms of service where plaintiffs' price-fixing claims "ha[d] nothing to do with [their] individualized use of Grubhub's website or mobile application").

iii. *Reasonable expectations and absurd result*

Relatedly, plaintiffs argue that "[n]o reasonable consumer would expect that accepting website terms in order to access prescription services would require arbitration of statutory ERISA claims" and holding otherwise would produce an absurd

---

[3] To the extent that defendant attempts to rely on the last phrase of the "Services" definition (i.e. that plaintiffs' claims relate to "use of . . . any services . . . provided . . . by or on behalf of CaremarkPCS Health L.L.C. or one of its subsidiaries or associates"), that reading suffers the same lack of nexus to the Caremark.com Terms as discussed above.

result. Opp. Mot. Compel at 20. "As a matter of contract formation, New York law provides that a contract should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." McFarlane, 524 F. Supp. 3d at 277 (cleaned up).

The Court agrees that plaintiffs could not have reasonably expected that signing up to receive mail-order prescriptions and other convenience-based online services would impact their ability to assert statutory ERISA rights. This expectation is supported by a reading of the entire Caremark.com Terms, which pertain to use of the website rather than the provision of pharmaceutical benefits. See generally 2025 Terms; see Silver, 724 F. Supp. 3d at 224 (using "an evaluation of the Lease in its entirety" to confirm the contract's focus and therefore the embedded arbitration provision's scope).

Holding otherwise would also produce the absurd result that the instant claims could be brought only by plan members who did not register for Caremark.com accounts. Courts in this Circuit view unfavorably such an arbitrary impact on who may assert claims and take it as additional evidence that the underlying contract does not sufficiently relate to the claims at issue. See, e.g., Davitashvili, 131 F.4th at 120 (declining to enforce arbitration provision contained in platforms' terms of service

where "[p]laintiffs who never used Grubhub are just as much class members as those who have"); Cooper v. Ruane Cunniff & Goldfarb Inc., 990 F.3d 173, 183 (2d Cir. 2021) (reversing enforcement of arbitration provision contained in employment contract where "others who were never [defendant's] employees could have brought claims identical to those stated by [plaintiff].").

## III. Conclusion

The Terms' arbitration provision does not encompass plaintiffs' claims. The Court need not reach plaintiffs' further arguments regarding substantive unconscionability and effective vindication. Defendant's motion to compel arbitration is denied.

## MOTION TO DISMISS

Having found that this matter cannot be compelled to arbitration, the Court must now decide defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) or failure to state a claim under Rule 12(b)(6).

## I. Legal Standard

Prior to discovery, establishing personal jurisdiction over a defendant requires only a prima facie showing, which may be supported solely by allegations. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). Thus, to

defeat a Rule 12(b)(2) motion to dismiss a plaintiff need only allege "(1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." SPV OSUS, Ltd. v. UBS AG, 882 F.3d 333, 343 (2d Cir. 2018).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In evaluating a motion to dismiss, the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [they] relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Therefore, in addition to plaintiffs' complaint, the Court considers each

plans' SPD and the denial letters plaintiffs received, which are quoted throughout the complaint.[4]

## II. Analysis

The Court first considers whether plaintiffs' complaint can survive against the named defendant, and finding that it can, addresses plaintiffs' individual claims.

### A. Choice of Defendant

Defendant argues that plaintiffs' complaint must be dismissed because "a different Caremark entity, CaremarkPCS Health, L.L.C." contracted with plaintiffs' employers to serve as their PBM. Mem. Mot. Dismiss at 12. Therefore, defendant asserts that plaintiffs cannot establish personal jurisdiction over, or state a claim against, it.

Whether plaintiffs have sufficiently identified a corporate defendant must be evaluated in the "context of the nomenclature created by the defendant." *Datskow v. Teledyne, Inc., Cont'l Prods. Div.*, 899 F.2d 1298, 1301 (2d Cir. 1990) (denying motion to dismiss where plaintiffs made clear they wished to sue crashed plane's engine manufacturer but named incorrect

[4] The Court declines to consider the PBM service contracts between CaremarkPCS and plaintiffs' employers since plaintiffs' complaint does not rely on them and there is no evidence that plaintiffs possessed them or had actual knowledge of their content.

affiliate among a family of corporate entities all using "Teledyne" in their name); cf. Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 173 (2d Cir. 2015) ("It would be strange indeed to demand greater precision of Plaintiffs in pleading the author's identity than they received as readers of [defendant's own] documents.").

Plaintiffs' complaint makes clear that they intend to sue the corporate entity acting as their PBM, which the documents in their possession identify as "CVS Caremark." See, e.g., Publicis SPD at 198; Gosline Denial Letter. Plaintiffs are not required at this stage to disentangle a corporate family's internal structure, particularly where defendant created the confusing nomenclature and limited its identifying information in communications with plaintiffs.

Thus, accepting the defendant that plaintiffs identified, their complaint sufficiently alleges personal jurisdiction. Plaintiffs' allegations that defendant "operates and makes benefit determinations in New York and in this District, and processes claims that originate in New York, including Plaintiffs' claims" establish both that defendant has minimum contacts with the forum and that exercising jurisdiction over it would be reasonable in the circumstances. Compl. ¶ 35.

Defendant's motion to dismiss for lack of personal jurisdiction is denied. Because the Court must accept plaintiffs' well pleaded facts against defendant as true, the Court may assess whether plaintiffs adequately stated a claim pursuant to Rule 12(b)(6). See Datskow, 899 F.2d 1298 (analyzing other bases for dismissal after denying Rule 12(b)(2) motion to dismiss on similar issue).

**B. Count III - Violation of Plan Terms**

Plaintiffs bring Count III individually and on behalf of the class pursuant to 29 U.S.C. § 1132(a)(1)(B) asserting that CVS Caremark denied their requests for coverage of Zepbound and offered coverage for substitutes Wegovy or Mounjaro in violation of their plans' terms. Compl. ¶¶ 176-78.

i. Rule 12(b)(6)

Count III encompasses two distinct allegations. First, plaintiffs allege that CVS Caremark's denial of Zepbound violated their plans' terms since it was medically necessary, regardless of its formulary status. Id. ¶ 177. Defendant argues that medical necessity is a necessary but not sufficient component of coverage that could not serve as an independent basis for coverage once Zepbound was removed from the formulary. Mem. Mot. Dismiss at 18-19. However, plaintiffs allege that both plans may cover medically necessary drugs not on the formulary

when the covered alternative is not viable. Compl. ¶¶ 101-02, 108-09. Plaintiffs allege that Zepbound meets the plans' definition of medical necessity and that the covered alternatives — Wegovy and Mounjaro — are not viable, but that CVS Caremark continued to deny coverage. Id. ¶¶ 115-31. Plaintiffs' need not have pleaded with particularity how they informed CVS Caremark that the alternatives were not viable. Popovchak v. UnitedHealth Grp. Inc., 692 F. Supp. 3d 393, 407-08 (S.D.N.Y. 2023) (general allegations of ERISA administrative exhaustion are sufficient). Thus, plaintiffs adequately pleaded that CVS Caremark misapplied plan terms when denying plaintiffs' request for Zepbound.

Second, plaintiffs claim that the drugs CVS Caremark offered as alternatives to Zepbound violate their plans' terms. Compl. ¶ 178. Both plans exclude drugs "not approved by the FDA for the proposed use," which is obesity and sleep apnea for Larkin and obesity for Gosline. Publicis SPD at 180; see also Hillside SPD Am. at 30. Plaintiffs allege and that Mounjaro is not FDA approved to treat obesity or sleep apnea, and Wegovy is not FDA approved to treat sleep apnea. Compl. ¶ 61. Yet, the denial letters plaintiffs received identified Wegovy and Mounjaro as the covered formulary alternatives to treat these conditions. Id. ¶¶ 15, 25. Thus, plaintiffs have plausibly

alleged that Caremark CVS violated their plans' terms by suggesting Wegovy or Mounjaro as alternatives.

ii. Class standing

Defendant argues that plaintiffs may not bring Count III on behalf of members of plans in which they do not participate, both because they lack Article III standing without individual injury and because ERISA restricts recovery to "the plan" plaintiffs participate in. Mem. Mot. Dismiss at 22-23 (citing 29 U.S.C. § 1132(a)(1)(B), (a)(3)). Where an ERISA plaintiff has standing to sue in their own right, the Second Circuit permits them to assert on behalf of a class any claim that "implicates the same set of concerns" across the class. Collins v. Ne. Grocery, Inc., 149 F.4th 163, 173 (2d Cir. 2025). Thus, an ERISA class may only include plans for which the named plaintiffs adequately represent the same set of concerns.

As demonstrated above, analysis of Count III depends on the specific language of plaintiffs' plans. Therefore, "the proof that a named plaintiff develops for his individual claims" will only "tend[] to prove" the claims of class plaintiffs in the same plans. Id. at 175. Thus, plaintiffs may only represent a class containing members of their own plans on Count III.

**C. Count I – Breach of Fiduciary Duty**

Plaintiffs bring this claim individually and on behalf of the class under 29 U.S.C. § 1132(a)(1)(B) and (a)(3) for breach of the fiduciary duties of care and loyalty. Regarding the duty of care, plaintiffs allege that CVS Caremark failed to abide by plan terms in making medical necessity determinations. Compl. ¶ 165. Regarding the duty of loyalty, plaintiffs allege that CVS Caremark elevated its own interests above those of plan members by uniformly denying Zepbound due to its rebate agreement with Novo Nordisk. Compl. ¶ 167.

i. Duplicative *claims*

Defendant argues that Count I must be dismissed as duplicative of plaintiffs' denial of benefits claims alleged in Count III. Mem. Mot. Compel at 20-21. "Attempts to repackage claims for wrongful denial of benefits under [§ 1132](a)(1)(B) as claims for breaches of fiduciary duty are routinely dismissed at the pleading stage." Popovchak, 692 F. Supp. 3d at 413 (internal citation omitted).

Plaintiffs' breach of care claim repackages its violation of plan terms claim because it alleges essentially the same facts and seeks coterminous relief. *See* Spillane v. New York *City Dist. Council of Carpenters*, 2024 WL 221816, at *3 (2d Cir. Jan. 22, 2024) (dismissing breach of fiduciary duty claim where

plaintiff "provides no separate basis for . . . his denial of benefits claim" and "seeks the same relief."). The Count alleges that CVS Caremark violated the duty of care by failing to diligently apply the plans' medical necessity requirements (Compl. ¶ 165), which is merely another way of saying it violated their plans' terms. And, though plaintiffs assert an additional avenue for relief under 29 U.S.C. § 1132(a)(3), the equitable relief available for a violation of plan terms under § 1132(a)(1)(B) or (a)(3) is simply the restoration of benefits. Therefore, plaintiffs' breach of the duty of care claim is dismissed as duplicative.

In contrast, "[p]laintiffs' loyalty claim is distinct." Popovchak, 692 F. Supp. 3d at 412. It is not "premised on the same allegations" as Count III and instead targets CVS Caremark's alleged systemic abandonment of its fiduciary obligations in favor of earning itself rebates through its deal with Novo Nordisk. Id.

Moreover, unlike the care claim, this claim is not a straightforward request for the restoration of benefits but instead alleges potentially larger injuries to the plan. See Compl. ¶ 167; *see also* Frommert v. Conkright, 433 F.3d 254, 272 (2d Cir. 2006) (declining to dismiss fiduciary duty claim under § 1132(a)(3) where it was not clear that "all of the relief

sought by the plaintiffs . . . can be adequately addressed by the relief available under § [1132](a)(1)(B).”). Thus, “[p]laintiffs may bring their claim for breach of the duty of loyalty pursuant to either [§ 1132](a)(3) or [§ 1132](a)(1)(B) [] at this stage.” Popovchak, 692 F. Supp. 3d at 412.

ii. Rule 12(b)(6)

Plaintiffs’ loyalty claim survives the Rule 12(b)(6) motion to dismiss because it adequately alleges that “(1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his fiduciary duty.” Singh v. Deloitte LLP, 650 F. Supp. 3d 259, 265-66 (S.D.N.Y. 2023) (citation omitted). Plaintiffs allege that both plans designate CVS Caremark authority to administer prescription drug claims — meaning it was acting in a fiduciary capacity when “uniformly denying Zepbound as not medically necessary.” Compl. ¶¶ 145–48, 167; see 29 U.S.C. § 1002(21)(A). Thus, by alleging that CVS Caremark “artificially decreased” their coverage in order to collect rebates through its agreement with Novo Nordisk, plaintiffs plausibly pleaded that CVS Caremark failed to act “solely in [their] interest.” Compl. ¶ 167; 29 U.S.C. § 1104(a)(1)(A).

iii. Class standing

Defendant also challenges plaintiffs’ ability to represent a class containing members of other plans on Count I. Mem. Mot.

Dismiss at 22-23. Plaintiffs' surviving breach of loyalty claim alleges a scheme to systematically deny claims regardless of plan language or plaintiffs' individual medical needs due to the conflicting incentive to earn rebates on Wegovy. Compl. ¶ 167. This scheme involves "general practices" that affect members of any plan for which CVS Caremark is the PBM. Collins, 149 F.4th at 174. Therefore, plaintiffs may bring Count I on behalf of the class currently alleged.

**D. Count II - Prohibited Transaction**

Plaintiffs bring Count II individually and on behalf of the class pursuant to 29 U.S.C. § 1106(b), which prohibits transactions between the plan and a fiduciary. Compl. ¶ 173. Specifically, plaintiffs allege that "[b]y removing Zepbound from formularies and substituting Wegovy, CVS Caremark caused the plans for which it administers pharmacy claims to engage in transactions from which CVS Caremark directly benefited though rebate agreements with Novo Nordisk." Id. ¶ 172. However, as plaintiffs concede, CVS Caremark is not a fiduciary when making formulary changes. See Opp. Mot. Dismiss at 7. Therefore, it cannot be held liable for this action under § 1106(b). See Flanigan v. Gen. Elec. Co., 242 F.3d 78, 87 (2d Cir. 2001) ("[P]rohibited transaction rules apply only to decisions by [a

fiduciary] acting in its fiduciary capacity."). Count II is dismissed for failure to state a claim.

**E. Counts IV and V - Requests for Equitable Relief**

Counts IV and V request equitable relief under 29 U.S.C. § 1132(a)(3)(A) and (B) respectively, but "only to the extent that the Court finds that the injunctive relief available pursuant to 29 U.S.C. § 1132(a)(1)(B) is inadequate to remedy the violations alleged in Counts I or II." Compl. ¶¶ 183, 187. Defendant argues that these claims must be dismissed as duplicative (Mem. Mot. Dismiss at 21), while plaintiffs counter that they are allowed to plead in the alternative. Opp. Mot. Dismiss at 22.

Count II is dismissed so the Court does not consider it, but plaintiffs have already pleaded Count I to request relief under both § 1132(a)(1)(B) and (a)(3). See Compl. ¶ 161. As discussed above, plaintiffs may proceed under both theories of relief on Count I at this stage. Therefore, Counts IV and V are entirely redundant and are dismissed.

**F. Amendment**

Plaintiffs request leave to amend their complaint in the event that any of their claims are dismissed. Opp. Mot. Dismiss at 27. The Court grants plaintiffs' request because, as

demonstrated by the analysis above, amendment would not be futile.

## CONCLUSION

For the foregoing reasons, defendant's motion to compel arbitration is DENIED. Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs have until September 25, 2026 to submit an amended complaint.

So Ordered.

Dated: New York, New York
August 26, 2026

Louis L. Stanton
LOUIS L. STANTON
U.S.D.J.